El Pueblo de Puerto Rico, y en su representación su Gobernador Blanton Winship, demandante y apelante. *v.* Harry Pietersz, demandado y apelado.

Núm. 8521.—*Sometido:* Noviembre 5, 1942. *Resuelto:* Enero 15, 1943.

*Hon. Procurador General George A. Malcolm* y *M. Rodríguez Ramos, Procurador General Auxiliar,* abogados del apelante; *J. J. Ortiz Alibrán,* abogado del apelado.

El Juez Asociado Señor Snyder emitió la opinión del tribunal.

Harry Pietersz radicó debidamente su declaración de ingresos para 1924. En 1936, de conformidad con la sección 57(*b*) de la Ley de Contribuciones sobre Ingresos, el Tesorero impuso a Pietersz una deficiencia de $576.80 para 1924. Además de reclamar intereses desde 1925, el Tesorero, de conformidad con la sección 58(*b*) de la referida ley, demandó el pago adicional de un cincuenta por ciento de la deficiencia, por el fundamento de que la deficiencia se "debiere [debía] a fraude para evadir la contribución. . . ."

La sección 60(*a*)(1) de dicha ley disponía un período de prescripción de cinco años para la tasación y para el comienzo de un pleito en cobro de contribuciones sobre ingresos. Por regla general este pleito, por lo tanto, hace tiempo que hubiera estado prescrito. Sin embargo, la sección 61(*a*) decía como sigue:

"En el caso de una declaración falsa o fraudulenta con la intención de evadir la contribución, o en el caso de haber dejado de rendir

la declaración, la contribución podrá ser impuesta, o un procedimiento entablado en una corte para el cobro de dicha contribución, en cualquier momento y sin hacerse tasación alguna.''

La tasación aquí envuelta, por lo tanto, se sostiene o cae al resolverse si la declaración de Pietersz para 1924 era o no ''una declaración falsa o fraudulenta con la intención de evadir la contribución. . .''.

La entonces Junta de Revisión e Igualamiento resolvió que la deficiencia estaba prescrita por el estatuto de prescripción, por lo que El Pueblo de Puerto Rico radicó el presente pleito en la corte de distrito en 1939 para el cobro de las cantidades envueltas. Después de un juicio sobre los méritos, la corte inferior dictó sentencia a favor del demandado, y El Pueblo ha apelado.

■ Los hechos aquí envueltos son relativamente sencillos. La declaración demostraba un ingreso neto de $4,581.37 y exenciones, créditos y deducciones montantes a $5,167. Por lo tanto, Pietersz no pagó contribución alguna. Sin embargo, incluyó en el referido ingreso de $4,581.37 la cantidad de $1,500 que declaró haber ganado en el ''arrastre de tubos para el acueducto'' de San Juan. Pero el gobierno alega que durante el 1924 él en realidad ganó en dicho negocio $12,500 y no $1,500, y que fraudulentamente él dejó de incluir esa cantidad en su planilla con el propósito de evadir la contribución correspondiente.

Con la excepción del testimonio de Miguel Ferrer en un detalle secundario, el caso del gobierno descansa enteramente en el *affidavit* del propio Pietersz, prestado el 27 de septiembre de 1935 a petición del Tesorero. En este affidavit él abiertamente admite haber recibido $17,000 de Vidal Sánchez, el contratista que estaba construyendo el acueducto en cuestión. Después de eso, el 6 de febrero de 1936 el Tesorero, alegando que Pietersz fraudulentamente había dejado de incluir $12,500 de esa cantidad en su planilla de 1924, tasó la deficiencia envuelta en este caso. Pero en ningún momento en este caso ha aducido el Tesorero testimonio

alguno ni ha explicado cómo computó la suma de $12,500 como el ingreso que Pietersz devengó de esta transacción y que él debió, por tanto, incluir en su planilla de 1924.

La defensa de Pietersz en todo momento ha sido que su beneficio neto en la transacción en cuestión fué $1,500, la cantidad que él declaró en su planilla. En su affidavit, y más tarde en su testimonio, él afirma que el remanente de su ingreso bruto recibido de Vidal Sánchez fué pagado a López Salgado y Barreto para alquilar "una caravana de trucks," a peones por trabajo realizado, indemnización a obreros y materiales. La única diferencia en cuanto a sus desembolsos surgió como resultado de lo declarado por Pietersz al efecto de que cuando le pagaron el balance adeudádole al concluir el trabajo, Miguel Ferrer, socio de Vidal Sánchez, retuvo $2,000 que el municipio reclamaba por tubos rotos en tránsito.

No se contradijo ninguna parte de este testimonio, excepto que Ferrer negó haber retenido dichos $2,000. Pero este testimonio se tomó quince años después de realizada la transacción. Era más probable que Pietersz recordara con mayor exactitud un detalle como éste que Ferrer, quien tenía que ver con muchos otros detalles del asunto. Además, al tiempo de ofrecer su testimonio, Ferrer mismo estaba siendo investigado en cuanto a su propia planilla en relación con dinero que recibió de Vidal. Realmente no estaría del todo injustificado explicar esta relativamente pequeña discrepancia, resolviendo que los $2,000 en cuestión pudieron haber sido incluídos en las otras partidas de gastos detalladas por Pietersz. "Mucho se excusaría a una persona llamada a responder a una acusación de fraude cometido once años antes, que no se excusaría a otra llamada para explicar una transacción reciente." (*Delone* v. *Commissioner of Internal Revenue,* 100 F. (2d) 507, 8 (C. C. A. 3er Cir., 1938) ).

Estamos completamente de acuerdo con la corte de distrito en cuanto a que el gobierno no presentó un caso de

responsabilidad contributiva sobre la cual pudiera basarse propiamente la deficiencia tasada por el Tesorero.

██ Creemos propio agregar que del mismo modo no se probó que Pietersz preparase su planilla fradulentamente con intención de evadir el pago de la contribución. Si verdaderamente se rinde una planilla, el hecho de no incluir en ella una porción del ingreso neto no la hace fraudulenta *ipso facto*. Convenir con esa contención nos obligaría a resolver que una planilla incorrecta es, sin más, una hecha con la intención de evadir la contribución. Los casos Federales, interpretando una sección idéntica, desaprueban esa contención (*Duffin* v. *Lucas,* 55 F. (2d) 786 (C. C. A. 6to. Cir., 1932) ; *Griffiths* v. *Commissioner of Internal Revenue,* 50 F. (2d) 782 (C. C. A. 7mo. Cir. 1931) ; *Moore* v. *Commissioner of Internal Revenue,* 37 B. T. A. 378 (1938) ; *Delone* v. *Commissioner of Internal Revenue,* supra; Paul & Mertens, *Law of Federal Income Taxation,* Vol. 5, secciones 48.03, 48.09). *Cf. Helvering* v. *Mitchell,* 303 U. S. 391. En verdad, nuestra ley reconoció en su sección 58(*a*) que una planilla incorrecta, aun cuando se prepare negligentemente, no conlleva necesariamente la comisión de fraude.

El gobierno descansa casi enteramente en *Casals* v. *Sancho Bonet, Tesorero,* 53 D.P.R. 640. Pero en ese caso esta corte, al considerar la cuestión de alegada intención fraudulenta para evadir la contribución, se confrontaba con una situación en que no se rindió planilla de clase alguna. La omisión de rendir una planilla puede ser en sí un hecho significativo en cuanto a la cuestión de intención. Ciertamente, la Legislatura, en la Ley de Contribuciones sobre Ingresos de 1924, (Ley núm. 74 de 1925, pág. 401), enmendó la ley de 1919 (Ley núm. 80, pág. 613) para disponer que tal omisión, sin ninguna otra prueba en cuanto a intención, facultaba al Tesorero a invocar las disposiciones de la referida sección 61(*a*). Además, en el caso de *Casals* la corte concluyó por las "circunstancias concurrentes" que existía fraude, incluyendo una

242

explicación de la omisión de rendir planilla que la corte rechazó por no merecerle credibilidad.

■ No hay fórmula infalible que provea una contestación definitiva en cuestiones de intención y fraude. "Nada hay tan frecuente en las relaciones humanas como el esfuerzo por conocer lo que está sucediendo en la mente de otros." (*United Business Corporation* v. *Commissioner of Int. Rev.*, 62 F. (2d) 754, 6 (C.C.A. 2do. Cir., 1933)). Casi siempre ello se establece mediante prueba circunstancial. Y todas las circunstancias que rodean una transacción son raramente aplicables a otro caso. Véase Motive and Intent in Federal Tax Law, Paul, Selected Studies in Federal Taxation, Second Series, pág. 255, a la pág. 288; *United States* v. *Murdock*, 290 U. S. 389, 94. Las circunstancias en el caso de autos señalan una sola dirección.

*La sentencia de la corte de distrito será confirmada.*