EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| McNeil Healthcare, LLC<br><br>Peticionario<br><br>v.<br><br>Municipio de Las Piedras y otros<br><br>Recurrido | Certiorari<br><br>2023 TSPR 135<br><br>213 DPR ___ |

Número del Caso:  AC-2022-0077


Fecha:  14 de noviembre de 2023


Tribunal de Apelaciones:

    Panel Especial


Abogados de la parte peticionaria:

    Lcdo. Juan A. Marqués Díaz
    Lcdo. Rubén Muñiz
    Lcda. Britt E. Arrieta Rivera

Abogados de la parte recurrida:

    Lcdo. Eduardo H. Martínez Echeverría
    Lcdo. Miguel Eliza Rivera
    Lcda. Lourdes I. Morera Ledón
    Lcdo. José A. Maysonet Marrero


Materia:  Ley de Patentes Municipales - Efecto de una declaración falsa o fraudulenta con la intención de evadir el pago de patente; parte a quien le corresponde el peso de la prueba, y la declaración sobre volumen de negocio.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

McNeil Healthcare, LLC

   Peticionario

      v.                         AC-2022-0077

Municipio de Las Piedras y otros

   Recurridos

La Jueza Presidenta Oronoz Rodríguez emitió la Opinión del Tribunal

En San Juan, Puerto Rico, a 14 de noviembre de 2023.

El presente recurso nos permite examinar la disposición correspondiente a la excepción del término prescriptivo para determinar una deficiencia en el pago de patentes municipales, según dispone la *Ley de Patentes Municipales*, <u>infra</u>. En específico, nos brinda la oportunidad de interpretar el efecto de una "declaración falsa o fraudulenta con la intención de evadir el pago de patente[s]" y a qué parte le corresponde el peso de la prueba.

De otro lado, la controversia trabada nos permite analizar si una declaración sobre volumen de negocio puede juramentarse ante una persona autorizada a tomar juramentos por las leyes de los Estados Unidos.

Luego de un estudio cuidadoso del expediente y tras realizar un análisis particularizado de las normas jurídicas sobre Derecho Tributario, tanto a nivel estatal como federal, determinamos que, ante una alegación de falsedad o fraude en una declaración de volumen de negocio, la municipalidad que levanta la deficiencia en el pago de sus patentes tiene el peso de probar que la persona contribuyente actuó con intención de evadir tal pago. A su vez, resolvemos que una declaración sobre volumen de negocio puede juramentarse ante una persona autorizada a tomar juramentos por las leyes de los Estados Unidos, según provee la *Ley de Patentes Municipales*, infra.

A continuación, exponemos los hechos génesis a la controversia ante nos.

## I.

Como resultado de varios pleitos civiles presentados por OMJ Pharmaceuticals, Inc. (OMJ) y Johnson & Johnson Professional Co. (PR) Inc. (Johnson & Johnson) en contra del Municipio de Las Piedras (Municipio), este último quedó sujeto a reintegrar a ambas compañías las cantidades pagadas en concepto de patentes municipales en exceso.[1] No obstante, en el ínterin del proceso judicial, las compañías codemandantes se habían fusionado entre sí, sobreviviendo únicamente OMJ. Consecutivamente, OMJ transfirió indirectamente todos sus

---

[1] Véase: *Johnson & Johnson Professional Co. (PR) Inc. v. Hon. Ángel R. Peña Rosa, Alcalde de Las Piedras y otros*, Civil Núm. HSCI200201170 consolidado con *OMJ Pharmaceuticals, Inc. v. Hon. Ángel R. Peña Rosa, Alcalde de Las Piedras y otros*, Civil Núm. HSCI200201169.

activos y operaciones en el Municipio a McNeil Healthcare LLC (McNeil). Sin embargo, durante el pleito, nunca se incluyó ni se sustituyó a McNeil como parte de este.

Así las cosas, y por una alegada falta de recursos económicos de parte del Municipio para satisfacer la deuda con las codemandantes, estas últimas propusieron transar un por ciento de la deuda a cambio de una exención contributiva. En respuesta, el 18 de abril de 2008, la entonces alcaldesa del Municipio, Itzamar Peña Ramírez, cursó una misiva en la que expresó que su administración tenía la intención de otorgarle a Johnson & Johnson la exención solicitada "luego de la aprobación de una Ordenanza Municipal autorizando a la Alcaldesa para estos propósitos".[2] A cambio, esta compañía condonaría al Municipio del pago total de la deuda finalmente adjudicada por el Tribunal.

Como resultado, el 30 de agosto de 2008 la Legislatura Municipal de Las Piedras adoptó la Resolución Número 12, Serie 2008-2009 (Resolución Núm. 12), en la que se le concedió una exención contributiva a McNeil por un término de 15 años, a partir del 1 de julio de 2008. En específico, se le confirió una tasa preferencial del 0.025% del 1% sobre el volumen de negocios para el pago de patentes municipales. Por su parte, el Municipio quedaría eximido de pagar la deuda adjudicada en los casos civiles HSCI2002-01169 y HSCI2002-01170.

De acuerdo con lo anterior, el Municipio preparó un

_____

[2] Apéndice de la Apelación, pág. 220.

documento titulado "CONCESIÓN DE EXENCIÓN CONTRIBUTIVA MUNICIPAL A MCNEIL HEALTHCARE LLC EN LO SUCESIVO DENOMINADO EL PETICIONARIO O CONCESIONARIO, CASO NÚM. _____ DE CONFORMIDAD CON LAS DISPOSICIONES DE LA RESOLUCIÓN NÚM 12 DEL 30 DE AGOSTO DE 2008" (Concesión).[3] En dicha Concesión se recogieron los acuerdos esbozados en la Resolución Núm. 12. Asimismo, se dispuso que McNeil vendría obligado a presentar su aceptación del acuerdo, mediante declaración jurada, luego de que se le expidiese una copia certificada del Decreto. En ese sentido, se dispuso que, una vez presentada la aceptación, "este Decreto se considerará como un contrato entre el Municipio de Las Piedras y el Peticionario".[4] Como cuestión de hecho, esta copia certificada nunca fue expedida por el Municipio y, como resultado, McNeil no presentó su aceptación bajo juramento. No obstante, a partir de entonces, McNeil utilizó la tasa preferencial para el cómputo de patentes municipales.

El 9 de mayo de 2011 el Municipio cursó a McNeil una **notificación preliminar** de deficiencia para los años fiscales 2008-2009, 2009-2010 y 2010-2011.[5] En la misiva, el Municipio aseveró que la Resolución aprobada no cumplía con las disposiciones de la *Ley de Patentes Municipales*, infra, y que, por tanto, la exención conferida era nula. De esta manera, concluyó que McNeil debía computar las patentes a

_____

[3] Íd., pág. 226.
[4] Íd., pág. 228.
[5] Fecha de depósito en correo certificado.

pagar a base del 0.5%, lo que constituía la tasa vigente en el Municipio. Empero, **no fue hasta el 19 de febrero de 2013** que el Municipio remitió la **notificación final de la deficiencia**, la cual fijó en la suma total de $2,643,196, tras añadir penalidades, intereses y recargos. Entre estas penalidades, se incluyó un señalamiento de que McNeil no había presentado la declaración sobre volumen de negocio para el año fiscal 2010-2011, por haber sido juramentada ante una notaria del estado de Nueva Jersey.

A raíz de esta notificación, el 21 de marzo de 2013, McNeil presentó una demanda en contra del Municipio al amparo de la *Ley de Patentes Municipales*, infra. En esta, impugnó la deficiencia notificada y reclamó la validez de la Concesión. Asimismo, arguyó que el Municipio estaba impedido de notificar y tasar deficiencias para el año fiscal de 2008-2009 por haber expirado el término prescriptivo que provee la ley para ello. Por otro lado, sostuvo que la penalidad impuesta para el año fiscal 2010-2011 sobre incumplimiento de la declaración jurada sobre el volumen de negocios es improcedente ya que rindió la referida declaración conforme a lo requerido en la ley.

Ulteriormente, el Municipio notificó a McNeil dos notificaciones finales de deficiencia que incluían los años fiscales 2011-2012, 2012-2013 y 2013-2014.[6] En respuesta,

---

[6] La notificación final para los años 2011-2012 y 2012-2013 se realizó mediante carta fechada el 4 de abril de 2013. Por su parte, la notificación final para el año fiscal 2013-2014 se hizo a través de carta fechada el 28 de mayo de 2014.

McNeil presentó dos demandas adicionales en las que impugnó tales notificaciones. Los tres pleitos fueron consolidados el 5 de noviembre de 2014.

En lo pertinente, el 24 de febrero de 2015, el Municipio presentó una *Moción de sentencia sumaria parcial* en la que solicitó que: (1) se determinara si existía una legislación válida que autorizara la exención contributiva a la que aludía McNeil y (2) de existir tal legislación, si en efecto, McNeil poseía tal derecho. Arguyó que la *Ley de Patentes Municipales*, infra, no autorizaba al Municipio a conceder únicamente a McNeil una tasa contributiva sobre volumen de negocios preferencial del 0.025%. En la alternativa, argumentó que, de sostenerse la validez de la Concesión, el contrato no quedó perfeccionado pues no se presentó la aceptación bajo juramento, según disponía la Concesión.

Por su parte, McNeil presentó una oposición a la solicitud de sentencia sumaria parcial del Municipio, y a su vez, solicitó que se dictase sentencia sumaria a su favor. En dicho escrito, reiteró la validez de la Resolución Núm. 12, así como la prescripción de la tasación de la deficiencia para el año fiscal 2008-2009. En la alternativa, expuso que, de determinarse que la Concesión era inválida, el Municipio venía obligado a pagarle la cantidad adeudada como resultado del pleito anterior. Asimismo, argumentó que presentó debidamente la declaración para los años 2010-2011 por lo que no procedía la penalidad impuesta.

Sometidas las mociones, y tras varios trámites procesales, el 29 de abril de 2021, el Tribunal de Primera Instancia notificó una *Sentencia* mediante la cual desestimó las demandas de McNeil y confirmó las notificaciones de deficiencia levantadas por el Municipio. Coligió que la Resolución Núm. 12 no redujo válidamente el tipo contributivo vigente en el Municipio debido a que: (1) al ser aprobada para un propósito limitado, no se podía considerar como una ordenanza; (2) no incluyó una reducción a otros negocios y (3) no se hizo con el propósito de incentivar una industria. Por otra parte, aun si la Resolución Núm. 12 fuera válida, concluyó que no se perfeccionó el acuerdo entre las partes debido a que el Municipio no hizo una oferta mediante la expedición de una copia certificada, como tampoco McNeil materializó una aceptación mediante la presentación de una declaración jurada en la Oficina del Director de Finanzas del Municipio.

En cuanto a la prescripción de la deuda para el año 2008-2009, resolvió que el término no estaba prescrito pues aplicaba una de las excepciones recogidas en la ley.[7] En ese

---

[7] La Sección 19 de la *Ley de Patentes Municipales*, Ley Núm. 113 de 10 de julio de 1974 (21 LPRA secs. 651-652y) (derogada) disponía que:

> Excepto lo provisto en la Sección 20 de esta ley:
> (a)Regla general.— El monto de las patentes impuestas por autorización de esta ley será tasado **dentro de los cuatro (4) años después de haberse rendido la declaración** y ningún procedimiento en el tribunal sin tasación para el cobro de dichas patentes será comenzado después de la expiración de dicho período.

[. . .] 21 LPRA sec. 651r(a) (ed. 2014) (énfasis suplido).

sentido, coligió que el término prescriptivo no aplicaba porque McNeil voluntariamente presentó **información falsa** al reclamar la tasa preferencial del 0.025% al momento de presentar la declaración sobre el volumen de negocios. Según el análisis esbozado por el foro primario, McNeil debió haber sabido que no tenía derecho a tal exención. Por tanto, el Tribunal de Primera Instancia determinó que McNeil produjo, deliberadamente, información falsa al presentar la declaración impugnada.

A su vez, la sala sentenciadora validó la penalidad por no presentar la declaración para el año 2010-2011 debido a que **la declaración rendida no fue debidamente juramentada**. En particular, sostuvo que la declaración que presentó McNeil, **juramentada ante una notaria del estado de Nueva Jersey**, no era válida pues la *Ley de Patentes Municipales*, <u>infra</u>, exigía que se hiciese ante un funcionario autorizado por el Estado Libre Asociado. Añadió que McNeil tan siquiera acreditó la autoridad legal de la referida notaria por los medios que dispone la legislación notarial.

Finalmente, en cuanto a la acreencia de la deuda por los casos HSCI2002-01169 y HSCI2002-01170, determinó que esta pertenecía a las entidades allí demandantes y no a McNeil.

---

Por su parte, la Sección 20 de la referida ley apercibía que:

> (a) En el caso de una **declaración falsa o fraudulenta <u>con la intención de evadir el pago de la patente</u>** o en el caso de que se dejare de rendir declaración, **la patente podrá ser tasada**, o un procedimiento en el tribunal sin tasación para el cobro de dicha patente podrá comenzarse, **en cualquier momento**. 21 LPRA sec. 651s (ed. 2014) (énfasis suplido).

Inconforme, el 16 de agosto de 2021, McNeil presentó un recurso de apelación ante el Tribunal de Apelaciones en el que reiteró los planteamientos esbozados ante el foro inferior. El 2 de mayo de 2022, el Tribunal de Apelaciones notificó una *Sentencia* en la que confirmó el dictamen recurrido. En síntesis, el foro apelativo intermedio coincidió con el razonamiento esbozado por el foro primario. Así las cosas, el 17 de mayo de 2022, McNeil presentó una *Moción de reconsideración*. Esta fue denegada mediante una *Resolución* notificada el 17 de junio de 2022.

Insatisfecho aún, el 16 de agosto de 2022, McNeil presentó ante este Tribunal el presente recurso y señaló los errores siguientes:

> Erró el TA al confirmar al TPI y concluir que McNeil no es la acreedora legal de la deuda del Municipio bajo los casos números HSCI20021169 y HSCI200201170.
>
> Erró el TA al concluir que procede la penalidad por dejar de rendir la declaración de volumen de negocios del año fiscal 2010-2011.
>
> Erró el TA al concluir que la deficiencia para el año fiscal 2008-2009 no está prescrita porque aquí no se probó que hubo la requerida intención del contribuyente para que medie una declaración [falsa] bajo la Ley de Patentes.
>
> Erró el TA determinar la invalidez o inexistencia de la Resolución 12.
>
> Erró el TA determinar que no existe una concesión válida toda vez que aquí quedó perfeccionado el contrato, se cumplieron con los requisitos para que exista un contrato y las partes que comparecieron son las partes correctas que se obligaron bajo el contrato.

Tras acoger el presente recurso como un *certiorari*, lo expedimos a los efectos de atender únicamente el segundo y el tercer error señalado. Contando con las comparecencias de las partes, resolvemos.

## II.

### A. *Ley de Patentes Municipales*

Nuestra Constitución dispone que el poder del Estado "para imponer y cobrar contribuciones y autorizar su imposición y cobro por los municipios se ejercerá según se disponga por la Asamblea Legislativa, y nunca será rendido o suspendido". Art. VI, Sec. 2, Const. ELA, LPRA, Tomo 1. Por consiguiente, los municipios, por sí mismos, no cuentan con un poder inherente para imponer contribuciones. Lukoil Pan Americas v. Mun. Guayanilla, 192 DPR 879, 887 (2015); Interior Developers v. Mun. de San Juan, 177 DPR 693, 703 (2009); Levy, Hijo v. Mun. de Manatí, 151 DPR 292, 299 (2000). No obstante, en aras de que "los municipios tengan mecanismos para recaudar fondos y así poder brindarles más servicios a sus ciudadanos, la Asamblea Legislativa ha adoptado varios estatutos en donde se les delega la facultad de imponer contribuciones a nivel municipal". Lukoil Pan Americas v. Mun. Guayanilla, supra, pág. 887 (escolios omitidos).

Uno de estos estatutos fue la *Ley de Patentes Municipales*, Ley Núm. 113 de 10 de julio de 1974 (21 LPRA

secs. 651-652y) (derogada).[8] Entre otras cosas, esta legislación autorizó a todas las asambleas municipales del país "a imponer y cobrar, de acuerdo con las disposiciones de esta ley, a toda persona dedicada a la prestación de cualquier servicio, o a la venta de cualquier bien, negocio financiero o cualquier industria o negocio" el pago de patentes municipales. 21 LPRA sec. 651b (ed. 2014).[9] En ese sentido, las patentes no son más que "'un impuesto sobre el volumen de negocios de la empresa objeto del tributo', el cual se calcula a base del volumen de negocios llevado a cabo por la empresa en ese municipio". Lilly del Caribe, Inc. v. Municipio Autónomo de Carolina, 210 DPR 306, 321 (2022) (citando a Lukoil Pan Americas v. Mun. Guayanilla, supra, pág. 889; Muñiz Burgos, Inc. v. Mun. de Yauco, 187 DPR 665, 681 (2013)).

**B. *La falsedad o fraude en la presentación de declaraciones sobre el volumen de negocios***

El poder delegado a los municipios de imponer y cobrar impuestos no es irrestricto. Como las acciones del Estado, está sujeto a la protección constitucional del debido proceso de ley, la validez y exigibilidad de la deuda reclamada y los términos prescriptivos que se recogen a través de los distintos estatutos. Mun. San Juan v. Prof. Research, 171 DPR 219, 231 (2007). Esto pues, se busca evitar que, al ejercer

---

[8] La legislación aquí citada comprende la normativa vigente al momento de los hechos del caso de autos. Esta quedó derogada al aprobarse *el Código Municipal de Puerto Rico*, Ley Núm. 107-2020, 21 LPRA secs. 7001-8351. Sin embargo, cabe resaltar que el artículo citado de la ley derogada se mantiene intacto, a grandes rasgos, en el *Código Municipal de Puerto Rico*.
[9] Véase, además: *Código Municipal de Puerto Rico*, supra, 21 LPRA sec. 8161.

las facultades conferidas, los municipios actúen de forma arbitraria. Íd.

De esta manera, la *Ley de Patentes Municipales*, supra, provee el procedimiento a seguir para la tasación de una deficiencia con respecto a la contribución impuesta. En específico, se impone la obligación de notificar preliminarmente la deficiencia a la persona sujeta al tributo para que oportunamente, si así lo desea, pueda solicitar la reconsideración de esta. 21 LPRA sec. 651o (ed. 2014).[10] Una vez transcurridos los términos aplicables que permiten la reconsideración, el Director de Finanzas notificará por correo certificado la **notificación final de la deficiencia** alegada. 21 LPRA sec. 651o (ed. 2014).[11] Tal notificación de deficiencia no es otra cosa que "el trámite administrativo mediante el cual el municipio le informa al contribuyente que se determinó una contribución mayor a la que éste declaró". Mun. San Juan v. Prof. Research, supra, págs. 231-232 (citas omitidas). De otro lado, la tasación de la patente constituye el acto de requerir el pago de la deficiencia, acto que ocurre una vez se remiten las notificaciones y la persona contribuyente tiene la oportunidad de impugnarlas. Íd., pág. 232.

De conformidad con las garantías procesales, el procedimiento de tasación está sujeto al **término prescriptivo de 4 años** después de haberse presentado la declaración sobre

---

[10] Véase, además: *Código Municipal de Puerto Rico*, supra, 21 LPRA sec. 8175.
[11] Véase, además: *Código Municipal de Puerto Rico*, supra, 21 LPRA sec. 8175.

el volumen de negocios. 21 LPRA sec. 651r(a) (ed. 2014).[12] Por ende, **"ningún procedimiento en el tribunal sin tasación para el cobro de dichas patentes será comenzado después de la expiración de dicho período"**. 21 LPRA sec. 651r(a) (ed. 2014) (énfasis suplido).[13] En el suceso de incumplimiento con el término prescriptivo señalado, el municipio se corre el riesgo de perder el derecho a recobrar la contribución no devengada. Mun. San Juan v. Prof. Research, supra, pág. 232. No obstante, lo anterior está sujeto a varias excepciones.

En lo concerniente, la *Ley de Patentes Municipales*, supra, establece que, tanto el Director de Finanzas del municipio en cuestión como la persona contribuyente a la que se le atribuye la deficiencia, pueden pactar por escrito tasar la patente con posterioridad al vencimiento del plazo prescriptivo. 21 LPRA sec. 651s(b) (ed. 2014).[14] Asimismo, la Sección 20 de la citada ley dispone que:

> En el caso de una **declaración falsa o fraudulenta <u>con la intención de evadir el pago de la patente</u>** o en el caso de que se dejare de rendir declaración, **la patente podrá ser tasada**, o un procedimiento en el tribunal sin tasación para el cobro de dicha patente podrá comenzarse, **en cualquier momento**. 21 LPRA sec. 651s(a) (ed. 2014) (énfasis suplido).[15]

Esta Curia no ha tenido la oportunidad de interpretar la

---

[12] Véase, además: *Código Municipal de Puerto Rico*, supra, 21 LPRA sec. 8178(a).

[13] Véase, además: *Código Municipal de Puerto Rico*, supra, 21 LPRA sec. 8178(a).

[14] Véase, además: *Código Municipal de Puerto Rico*, supra, 21 LPRA sec. 8179(b).

[15] Véase, además: *Código Municipal de Puerto Rico*, supra, 21 LPRA sec. 8179(a).

disposición anteriormente citada. Sin embargo, nótese que el texto reseñado es prácticamente idéntico al articulado correspondiente sobre las planillas o las declaraciones falsas que se recoge en el *Código de Rentas Internas para un nuevo Puerto Rico*, Ley Núm. 1-2011, 13 LPRA secs. 1010-6100.[16] Por tanto, conviene aludir a ciertos pronunciamientos de este Tribunal que han interpretado las legislaciones tributarias a nivel estatal con el fin de darle contenido a la frase "*la intención de evadir contribuciones*".

En Soto Gras v. Domenech, 42 DPR 524 (1931) analizamos dos estatutos contributivos para esclarecer cuál era la ley aplicable del caso. Sobre el particular, se dispuso lo siguiente:

> La Ley de 1919 exigía para el caso de dejarse de rendir la declaración que lo fuera con el fin de evadir el pago de la contribución. La de 1925 fija escuetamente el hecho de dejarse de rendir la declaración. Esto en nada influye en la resolución de este caso. **Lo que pudiera tener influencia es que la Ley de 1919 sólo exigía que la declaración fuera falsa, mientras que la de 1925 exige que la declaración sea 'falsa o fraudulenta con la intención de evadir el pago de la contribución', ya que falso tal como se usa en la Ley de 1919 ha sido definido e interpretado como incorrecto.** Soto Gras v. Domenech, supra, pág. 528 (citando a Klein, Federal Income Taxation, pág. 1470; Seaman v. Bowers, 297 Fed. 375; 25 C. J. 435, 436). (Énfasis suplido).

---

[16] *Planilla o Declaración Falsa o Ausencia de Planilla o Declaración*:

> En el caso de una planilla o declaración requerida bajo cualquier Subtítulo de este Código que fuese rendida de una **manera falsa o fraudulenta con la intención de evadir contribución** o en el caso de que se dejare de rendir planilla o declaración, la contribución podrá ser tasada, o un procedimiento en corte sin tasación para el cobro de dicha contribución podrá comenzarse, en cualquier momento. 13 LPRA sec. 33006 (énfasis suplido).

Por su parte, en <u>Pueblo v. Pietersz</u>, 61 DPR 237 (1943), tuvimos la oportunidad de expandir sobre el criterio de *intención* que introdujo la legislación del 1925, antes citada en <u>Soto Gras v. Domenech</u>, supra. Al respecto, establecimos que:

> Creemos propio agregar que del mismo modo **no se probó que Pietersz preparase su planilla fradulentamente con intención de evadir el pago de la contribución.** Si verdaderamente se rinde una planilla, **el hecho de no incluir en ella una porción del ingreso neto no la hace fraudulenta *ipso facto*. Convenir con esa contención nos obligaría a resolver que una planilla incorrecta es, sin más, una hecha con la intención de evadir la contribución.** Los casos [f]ederales, interpretando una sección idéntica, desaprueban esa contención (<u>Duffin v. Lucas</u>, 55 F. (2d) 786 (C. C. A. 6to. Cir., 1932); <u>Griffiths v. Commissioner of Internal Revenue</u>, 50 F. (2d) 782 (C. C. A. 7mo. Cir. 1931); <u>Moore v. Commissioner of Internal Revenue</u>, 37 B. T. A. 378 (1938); <u>Delone v. Commissioner of Internal Revenue</u>, supra; Paul & Mertens, Law of Federal Income Taxation, Vol. 5, secciones 48.03, 48.09). <u>Cf. Helvering v. Mitchell</u>, 303 U. S. 391. **En verdad, nuestra ley reconoció en su sección 58(a) que una planilla incorrecta, aun cuando se prepare negligentemente, no conlleva necesariamente la comisión de fraude.** <u>Pueblo v. Pietersz</u>, supra, pág. 241 (énfasis suplido).[17]

Es de notar que, en ese momento, no hicimos distinción alguna entre una declaración falsa o fraudulenta. Ahora bien, al enfrentarnos a dicha disposición, recurrimos a la casuística federal, a modo persuasivo, por la semejanza entre el esquema tributario federal y el nuestro; similitud que subsiste en la actualidad. <u>Ortiz Chévere v. Srio. Hacienda</u>, 186 DPR 951, 971 (2012). En lo concerniente, la Sección

---

[17] Cabe resaltar que la conducta imputada al contribuyente constaba en haber mentido sobre la cantidad final de ingresos devengados para el año 1924.

6501(c) del Código Federal de Rentas Internas establece que: "**In the case of a false or fraudulent return with the intent to evade tax**, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time". Internal Revenue Code, 26 U.S.C. sec. 6501(c) (énfasis suplido).

Al examinar los términos *falso y fraudulento*, se ha interpretado que no existe una distinción significativa entre ambos. Brister v. U.S., 35 Fed. Cl. 214, 219 (1996). Sin embargo, puede entenderse que una declaración es falsa "si no era verdadera cuando se prestó y si la persona que la hizo **sabía que era falsa**". Íd. (Traducción suplida) (énfasis suplido). Por tanto, al imputarse falsedad en la declaración impugnada, **se requiere la presentación de prueba que establezca que hubo más que un mero error o negligencia.** Íd. Asimismo, se ha expresado que el Gobierno debe probar que la **declaración impugnada por alegada falsedad se hizo con la intención de evadir el pago de contribuciones.** Feller v. C.I.R., 135 T.C. 497, 501 (2010).

También, el término "fraude" se ha analizado de la forma siguiente:

> Fraud is defined as an intentional wrongdoing designed to evade tax believed to be owing. Professional Services v. Commissioner, 79 T.C. 888, 930 (1982). **Respondent's burden of proving fraud is met if it is shown that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead[,] or otherwise prevent the collection of taxes.** DiLeo v. Comm'r, 96 T.C. 858, 874 (1991), affd., 959 F.2d 16 (2d Cir. 1992)

(citando a <u>Stoltzfus v. United States</u>, 398 F.2d 1002, 1004 (3d Cir 1968); <u>Rowlee v. Commissioner</u>, 80 T.C. 1111, 1123 (1983)). (Énfasis suplido).

A su vez, la existencia de fraude ha de ser determinada a la luz de la totalidad del expediente. <u>DiLeo v. Comm'r</u>, supra, pág. 874; <u>Gajewski v. Commissioner</u>, 67 T.C. 181, 199 (1976). Sobre este particular, la casuística indica que el "fraude puede ser probado mediante prueba circunstancial". <u>DiLeo v. Comm'r</u>, supra, pág. 874, <u>Rowlee v. Commissioner</u>, supra, pág. 1123 (traducción suplida). Como guía, la Corte de Apelaciones federal para el Noveno Circuito en <u>Bradford v. Commissioner</u>, 796 F.2d 303, 307 (9th Cir. 1986), proveyó una lista *numerus apertus* sobre el tipo de evidencia circunstancial que puede hacer más probable la intención de evadir el pago de impuestos en la declaración impugnada. Entre ellas se encuentran: (1) reportar ingresos menores a los devengados, (2) manejar inadecuadamente los libros de contabilidad, (3) ocultar activos y (4) participar en actividades ilegales. <u>Bradford v. Commissioner</u>, supra, pág. 307.

### C. *Declaración sobre volumen de negocios*

La Sección 10 de la *Ley de Patentes Municipales*, <u>supra</u>, establece que "[t]oda persona sujeta al pago de la patente o su agente autorizado estará obligada a rendir una declaración de volumen de negocio [. . .] bajo juramento prestado **ante cualquier funcionario municipal o del Estado Libre Asociado de Puerto Rico autorizado** para ello". 21 LPRA sec. 651h(a)

(ed. 2014) (énfasis suplido).[18]

Empero, sobre la facultad para tomar juramentos y declaraciones, de la Sección 41 de la referida ley se desprende que:

> **Cualquier juramento o afirmación exigido o autorizado por esta ley o por cualesquiera reglamentos** bajo autoridad de las mismas **podrá ser tomado por cualquier persona autorizada a tomar juramentos de carácter general por las leyes** del Estado Libre Asociado de Puerto Rico, **de los Estados Unidos**, o del Distrito de Columbia donde se tomare dicho juramento o afirmación o por cualquier funcionario consular de los Estados Unidos. Este inciso no se interpretará como una enumeración exclusiva de las personas que podrán tomar dichos juramentos o afirmaciones. 21 LPRA sec. 652m(b) (ed. 2014) (énfasis suplido).[19]

Por su parte, la Sección 22 impone el cargo de intereses y penalidades cuando se dejare de rendir la declaración sobre volumen de negocios, a no ser que se demuestre la existencia de causa razonable para la omisión y que esta no se debe a un descuido voluntario. 21 LPRA sec. 651u (ed. 2014).

A su vez, el Reglamento para la Administración Municipal, Reglamento Núm. 7539 de 18 de julio de 2008, establece los requisitos a cumplir al presentarse la declaración sobre volumen de negocios. En lo pertinente, ordena que la declaración debe rendirse "bajo juramento prestado **ante el**

---

[18] Es meritorio enfatizar que, en el *Código Municipal de Puerto Rico*, supra, la Asamblea Legislativa eliminó lo relacionado con "el juramento prestado *ante cualquier funcionario municipal o del Estado Libre Asociado de Puerto Rico* autorizado para ello", según citado en la *Ley de Patentes Municipales*, supra. Véase: *Código Municipal de Puerto Rico*, supra, 21 LPRA sec. 8169(a)(2).

[19] La facultad que tienen las personas autorizadas a tomar juramentos de carácter general por las leyes de Estados Unidos, según se recoge en el artículo citado, se preserva en el *Código Municipal de Puerto Rico*, supra. Véase: *Código Municipal de Puerto Rico*, supra, 21 LPRA sec. 8200(b).

**notario autorizado para tomarlo** [. . .]". Reglamento para la Administración Municipal, supra, pág. 171 (énfasis suplido). "La declaración que no cumpla con los requisitos mencionados se considerará como no [presentada]". Íd., pág. 172.

Esbozado el marco jurídico aplicable a la controversia ante nos, disponemos de este asunto.

**III.**

**A.**

Procedamos a atender primero el tercer error señalado en el recurso ante nos.

McNeil alegó que el Tribunal de Apelaciones erró al confirmar el dictamen del foro primario que determinó que la deficiencia sobre el año fiscal 2008-2009 no estaba prescrita. Alegó que los foros *a quo* le imputaron equivocadamente la excepción sobre declaración falsa o fraudulenta con la intención de evadir el pago de patentes "[s]in que el Municipio hubiese presentado prueba alguna que así lo demostrara [. . .]".[20] De esta manera, para los foros inferiores, McNeil "deliberadamente utilizó una tasa de 0.025% **a la cual sabía que no tenía derecho**", lo que constituyó prueba suficiente para evitar la declaración de prescripción.[21] No obstante, McNeil advierte que esta conclusión es problemática porque, de no tener que probarse el elemento subjetivo de intención que exige la ley, "se

---

[20] Apelación, pág. 25.
[21] Íd.

llegaría al absurdo de que toda declaración que contenga un error sería una declaración falsa automáticamente[,] [eliminando] así, para todo fin práctico, los términos prescriptivos dispuestos por el legislador".[22]

El Municipio, por su parte, arguyó que la Sección 20 de la *Ley de Patentes Municipales*, supra, distingue entre una declaración falsa y una declaración fraudulenta con la intención de evadir el pago de patentes. En cuanto a la primera, sostuvo que "[b]asta con que se demuestre la falsedad de lo declarado a sabiendas de que lo que se declara es falso para que no aplique el periodo ordinario de cuatro años".[23] En ese aspecto, alegó que la peticionaria es una compañía multinacional sofisticada, por lo que le imputó conocimiento de que no existía acuerdo válido alguno que le concediera la tasa preferencial que reclamaba. De otro lado, indicó que, en el supuesto de estar llamado a probar la intención de evadir el pago de patentes por parte de McNeil, del expediente surgía la prueba necesaria para establecer que esta, de forma clara y deliberada, tenía tal intención al declarar que le cobijaba la tasa preferencial del 0.025% cuando no le correspondía. No nos convence.

Hoy, resolvemos que para que aplique la excepción de declaración falsa o fraudulenta al término prescriptivo sobre deficiencias en el pago de patentes municipales, es

---

[22] Alegato de la parte peticionaria, pág. 28.
[23] Alegato de la parte recurrida, pág. 36 (énfasis en el original).

imprescindible demostrar que el acto imputado es uno intencional. A estos efectos, se requiere prueba de que hubo algo más que un mero error o negligencia al rendir la declaración de volumen de negocios. Por consiguiente, es insuficiente una mera alegación por parte del municipio en cuestión sobre una declaración con información falsa, sin establecer que la persona contribuyente tenía la intención de evadir el pago de la patente.

En ambos supuestos –falsedad o fraude-, determinamos que **son los municipios los llamados a establecer la intención de la persona contribuyente de defraudar al erario para rebatir la defensa de prescripción**. Esto es indispensable pues, de otra forma, estaríamos ante un escenario en donde la misma limitación que intenta proteger a las personas contribuyentes del levantamiento de deficiencias tributarias por un término indefinido, constituiría letra muerta para todos los efectos reales.

Como cualquier otro asunto probatorio, la intención de evadir contribuciones a la que nos referimos puede ser demostrada mediante prueba circunstancial. Es decir, a través de la totalidad de los hechos y la prueba que obra en el expediente, que tiendan a probar de forma indirecta lo alegado. Ante un planteamiento de aplicación de la excepción a la defensa de prescripción, les corresponde a **los municipios el peso de la prueba de demostrar que, en efecto, las declaraciones presentadas fueron realizadas de manera falsa o**

**fraudulenta con el motivo de no pagar las patentes adeudadas.**
Asimismo, por resultar persuasiva, y a tono con lo aquí
pronunciado, adoptamos en nuestro ordenamiento jurídico la
lista no taxativa adoptada por la Corte de Apelaciones federal
para el Noveno Circuito en el marco de contribuciones sobre
ingresos por entender que sirve como punto de partida para
identificar aquella prueba circunstancial que puede
establecer la intención de evadir el pago de patentes
municipales. Véase Bradford v. Commissioner, supra, pág. 307.
A saber: (1) reportar ingresos menores a los devengados; (2)
manejar inadecuadamente los libros de contabilidad; (3)
ocultar activos, y (4) participar en actividades ilegales.
Íd.

Al aplicar la norma aquí acogida a los hechos
particulares del caso, observamos que McNeil -al momento de
rendir la declaración sobre el volumen de negocios en octubre
de 2008- debió haber sabido que no tenía derecho a la tasa
preferencial que reclamaba. Esto pues de la Concesión emitida
el 30 de agosto de 2008 surge que para que dicho decreto se
considerase un contrato entre las partes, McNeil venía llamado
a presentar su aceptación del acuerdo mediante una declaración
jurada. Ello, luego de que se le expidiera una copia
certificada de la Concesión. Sin embargo, y como surge del
expediente ante nos, lo anterior nunca ocurrió. Así pues, y
al tomar en consideración la sofisticación de McNeil,
concluimos que este presentó una declaración falsa al reclamar

una tasa preferencial al amparo de un contrato que nunca se perfeccionó. Sin embargo, esto no es suficiente para disponer de la controversia que nos ocupa.

Como aquí pautamos, son los municipios los llamados a demostrar la intención de evadir el pago de patentes cuando se pretenda utilizar la excepción de declaración falsa o fraudulenta al término prescriptivo sobre deficiencias en el pago de patentes municipales. Sin embargo, en este caso, el Municipio se limitó únicamente a imputarle a McNeil la falsedad de su declaración al sostener que esto era suficiente para que se levantara la prescripción de la deficiencia reclamada para el año 2008-2009. Al así actuar, el Municipio no cumplió con el estándar que aquí se establece. A estos efectos, es forzoso concluir que el tercer error señalado se cometió. No obstante, al adoptar en nuestro ordenamiento esta interpretación, entendemos prudente impartirle un efecto prospectivo.

Las decisiones emitidas por esta Curia, como norma general, tienen carácter retroactivo. Rosario Domínguez v. ELA, 198 DPR 197, 216 (2017); Datiz v. Hosp. Episcopal, 163 DPR 10, 17 (2004). "No obstante, en el ejercicio de nuestra discreción judicial, hemos emitido opiniones con efecto prospectivo en consideración a las circunstancias fácticas del caso, la justicia, la equidad, la mejor convivencia social o para evitar dislocaciones severas en nuestro sistema económico". Rosario Domínguez v. ELA, supra, pág. 216. Véanse

también: <u>López v. Porrata Doria</u>, 169 DPR 135 (2006); <u>Isla Verde Rental v. García</u>, 165 DPR 499 (2005).

A tono con lo anterior, hemos enumerado aquellos criterios que se han de considerar al momento de determinar si un nuevo precedente tendrá aplicación retroactiva o prospectiva, a saber: (1) la confianza depositada en la norma antigua o precedente; (2) el propósito que persigue la nueva regla para determinar si su retroactividad lo adelanta, y (3) el efecto de la nueva medida en la administración de la justicia. <u>Rosario Domínguez v. ELA</u>, supra, pág. 216; <u>Fraguada Bonilla v. Hosp. Aux. Mutuo</u>, 186 DPR 365, 393 (2012); <u>Datiz v. Hospital Episcopal</u>, supra, pág. 18.

Dicho esto, sostenemos que ante la controversia que nos ocupa, y al pronunciar la interpretación que hoy adoptamos, es apropiado que se le brinde una oportunidad al Municipio de demostrar mediante el desfile de prueba que McNeil -al presentar una declaración falsa- tuvo la *intención* de evadir el pago de las patentes.

**B.**

En lo atinente al segundo error señalado, McNeil alega que los foros inferiores erraron al imponerle una penalidad a la declaración para los años 2010-2011 por entenderse como no presentada al ser juramentada ante una notaria del estado de Nueva Jersey. Para ello, se amparó en la Sección 41 de la *Ley de Patentes Municipales*, <u>supra</u>.[24] Por otro lado, arguyó que no

---

[24] Véase: Alegato de la parte peticionaria, págs. 15-16.

podía imputársele haber incumplido con los medios de acreditación que provee la legislación notarial en Puerto Rico para protocolización de los documentos otorgados fuera del país, pues lo anterior no constaba como requisito en la *Ley de Patentes Municipales*, <u>supra</u>.[25] Sin embargo, de entenderse que sí era necesario el cumplimiento con el requisito de certificación que dispone la legislación notarial, sostuvo que a través del pleito en el foro primario, sí cumplió con tales requisitos.[26]

Por su parte, el Municipio arguyó que no se cometió tal error, puesto que la Sección 10 la *Ley de Patentes Municipales*, <u>supra</u>, establece que el juramento debe prestarse ante un funcionario municipal o del Estado Libre Asociado autorizado a estos efectos. A su vez, manifestó que el trato recíproco que se pueda ofrecer a los testimonios legitimados fuera de Puerto Rico no se rige por la *Ley de Patentes Municipales*, <u>supra</u>, sino por la Regla 41 del Reglamento Notarial, <u>infra</u>.[27] Asimismo, indicó que en este caso no se acreditó siquiera la autoridad de la notaria de Nueva Jersey sino hasta una etapa avanzada del pleito.[28]

La Regla 41 del Reglamento Notarial de Puerto Rico, 4 LPRA XXIV, dispone el procedimiento a seguir para la **protocolización** de los documentos notariales otorgados fuera de Puerto Rico. Se establece que, **para que tengan la eficacia**

---

[25] <u>Íd.</u>, pág. 15.
[26] Véase: Apéndice de la apelación, pág. 1796.
[27] Alegato de la parte recurrida, pág. 16.
[28] <u>Íd.</u>, en la pág. 18.

**de instrumentos públicos** en Puerto Rico, **estos documentos deben ser protocolizados.** Regla 41 del Reglamento Notarial, supra. En síntesis, se requiere que estos documentos sean legalizados, que no es otra cosa que presentar el documento que certifique por medio de la autoridad competente que, al momento de la legitimación, el notario o la notaria que la realizó estaba autorizada a ello. Regla 41 del Reglamento Notarial, supra.

Como mencionamos anteriormente, la Sección 10 de la *Ley de Patentes Municipales*, supra, establece que la declaración de volumen de negocio deberá ser juramentada "ante cualquier funcionario municipal o del Estado Libre Asociado de Puerto Rico autorizado para ello [. . .]". 21 LPRA sec. 651h(a). Sin embargo, la Sección 41 de la referida ley dispone que "**cualquier juramento** o afirmación **exigido o autorizado por esta ley** o por cualesquiera de los reglamentos [. . .] **podrá ser tomado por cualquier persona autorizada** a tomar juramentos de carácter general por las leyes del Estado Libre Asociado de Puerto Rico [o] **de los Estados Unidos** [. . .]". 21 LPRA sec. 652m(b) (ed. 2014) (énfasis suplido).

De un examen integral de la legislación citada no atisbamos impedimento alguno que evite que las personas contribuyentes rindan su declaración sobre volumen de negocios debidamente juramentadas por personas autorizadas a tomar juramentos al amparo de las leyes de los Estados Unidos. Al disponer sobre la facultad para tomar juramentos y

declaraciones exigidos a través de la legislación, la Sección 41 no provee una excepción para las declaraciones aquí impugnadas, de modo que solamente puedan ser juramentadas ante un funcionario autorizado en el Estado Libre Asociado.[29] En ese aspecto, resolvemos que la *Ley de Patentes Municipales*, supra, permite que las declaraciones sobre volumen de negocios sean juramentadas en los Estados Unidos o en el Distrito de Columbia ante funcionarios autorizados.

Ahora bien, es de notar que la *Ley de Patentes Municipales*, supra, no hace alusión alguna a la legislación notarial con respecto a la legalización del documento notarizado ante funcionario autorizado a ejercer fuera de Puerto Rico.[30] En esta coyuntura, es imprescindible resaltar que la Regla antes citada corresponde al proceso para **protocolizar** estos documentos; es decir, para darles eficacia de instrumento público y que tengan acceso al Registro de la Propiedad de Puerto Rico. Este procedimiento no es el que pretende realizar el Municipio.

En lo pertinente a la controversia trabada, McNeil presentó válidamente su declaración sobre volumen de negocios para el año fiscal 2010-2011, juramentada oportunamente ante

---

[29] Este análisis es cónsono, incluso, con las enmiendas realizadas por la Legislatura al promulgar el *Código Municipal de Puerto Rico*, supra. Véase el escolio número 16 de esta *Opinión*. Véase, además: *Código Municipal de Puerto Rico*, supra, 21 LPRA sec. 8200(b).

[30] Ciertamente, la práctica deseable sería que, de juramentarse las declaraciones ante funcionario autorizado en los Estados Unidos, al momento de presentarse tal declaración también se produzca la debida certificación según enmarcada en la Regla 41 del Reglamento Notarial, supra. De esta forma, los municipios tendrían mayor certeza de que el funcionario que realizó la juramentación goza de las facultades en ley para ello.

la notaria Diane Zielinski, en el estado de Nueva Jersey. A su vez, durante el trámite procesal del pleito, McNeil presentó la debida certificación emitida por el mencionado estado en la que se acreditó que la comisión de la referida notaria estaba vigente a la fecha en que legitimó la firma de la declaración impugnada.[31] En consecuencia, el segundo error señalado se cometió. No procede la penalidad impuesta puesto que McNeil sí presentó la declaración para el año 2010-2011 conforme a derecho.

**IV.**

Por los fundamentos expuestos, se modifica la Sentencia del Tribunal de Apelaciones respecto a los errores aquí atendidos. Se devuelve el caso al Tribunal de Primera Instancia para que se celebre la vista evidenciaria pertinente a los efectos de determinar la existencia de una intención de evadir el pago de patentes por parte de McNeil. Asimismo, se ordena la eliminación de la penalidad adjudicada al año fiscal 2010-2011 de conformidad con lo aquí resuelto.

Se dictará Sentencia de conformidad.

Maite D. Oronoz Rodríguez
Jueza Presidenta

---

[31] Véase: Apelación, pág. 23; Apéndice de la apelación, pág. 1796.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

McNeil Healthcare, LLC

   Peticionario

      v.                      AC-2022-0077

Municipio de Las Piedras y otros

   Recurridos

SENTENCIA

En San Juan, Puerto Rico, a 14 de noviembre de 2023.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se modifica la Sentencia del Tribunal de Apelaciones respecto a los errores aquí atendidos. Se devuelve el caso al Tribunal de Primera Instancia para que se celebre la vista evidenciaria pertinente a los efectos de determinar la existencia de una intención de evadir el pago de patentes por parte de McNeil Healthcare, LLC. Asimismo, se ordena la eliminación de la penalidad adjudicada al año fiscal 2010-2011 de conformidad con lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo Interina. El Juez Asociado señor Kolthoff Caraballo no intervino.

Bettina Zeno González
Secretaria del Tribunal Supremo Interina