LEVER BROS. EXPORT CORPORATION, demandante y recurrida, *v.* HÉCTOR LUIS ACEVEDO, ALCALDE DE SAN JUAN, y LAURA QUIÑONES, DIRECTORA DE FINANZAS DEL MUNICIPIO DE SAN JUAN, demandados y recurrentes.

*Número:* RE-91-107          *Resuelto:* 7 de marzo de 1996

---

[3] Sec. 4.2 de la L.P.A.U., 3 L.P.R.A. sec. 2172.

154

*José E. Méndez Cortada*, abogado de la parte recurrente; *Rafael Fernández Suárez*, abogado de la parte recurrida.

EL JUEZ PRESIDENTE SEÑOR ANDRÉU GARCÍA emitió la opinión del Tribunal.

El Municipio de San Juan (en adelante Municipio) solicita la revisión de una sentencia mediante la cual se dejó sin efecto una notificación de deficiencia a Lever Bros. Export Corporation en el pago de patentes municipales, en concepto de los ingresos brutos de la venta de productos que ésta mantiene a consignación en los almacenes de Plaza Provision (en adelante Plaza) y Borden Interamericana (en adelante Borden).

El Municipio sustenta la posición de que la referida deficiencia es el producto de los ingresos recibidos en con-

cepto de ventas atribuibles a la oficina que la corporación tiene dentro de sus límites territoriales. El tribunal de instancia determinó que la oficina que mantiene la corporación en el Municipio no es un establecimiento comercial dedicado, con fines de lucro, a la prestación de un servicio, a la venta de bienes o a cualquier industria o negocio en el referido municipio. Por ello, concluyó que el volumen de negocio generado por la venta de los referidos productos a través de Plaza y Borden en otros municipios no son atribuibles a la oficina de la corporación en el Municipio, según exige la Ley de Patentes Municipales, 21 L.P.R.A. sec. 651 *et seq.* De conformidad con lo anterior, dicho tribunal declaró con lugar la mencionada demanda de impugnación.

Por los fundamentos que se discuten más adelante, revocamos la sentencia recurrida. Veamos.

## I

Conforme a los hechos estipulados ante el tribunal de instancia, el Municipio le notificó una deficiencia a la demandante recurrida, Lever Bros. Export Corporation, (en adelante Lever) por la cantidad de quinientos sesenta y cinco mil cuatrocientos treinta y ocho dólares con veintiún centavos ($565,438.21), por los años fiscales 1983–1984 a 1987–1988 en concepto de las ventas alegadamente atribuibles a la oficina de la recurrente en el referido municipio. Recibida la notificación de deficiencia, Lever solicitó una vista administrativa. Luego de varias reuniones, la Directora de Finanzas del Municipio, la Sra. Laura Nieves, confirmó la deficiencia notificada pero aumentó la cantidad adeudada a seiscientos treinta y dos mil ciento setenta y ocho dólares con doce centavos ($632,178.12). Inconforme, Lever prestó la correspondiente fianza y presentó una demanda de impugnación de la deficiencia ante el Tribunal Superior.

Lever es una corporación organizada bajo las leyes del

estado de Delaware, con sus oficinas principales localizadas en la ciudad de Nueva York, desde donde conduce sus transacciones comerciales. La demandante está registrada en el Departamento de Estado de Puerto Rico como una corporación foránea autorizada para hacer negocios en la Isla y tiene acuerdos comerciales con Plaza desde 1961 y con Borden desde 1986. Mediante los referidos acuerdos, estas dos (2) compañías mantienen a consignación los productos de Lever en sus respectivos almacenes en Guaynabo, Bayamón y Toa Baja, los cuales son vendidos en Puerto Rico.[1]

Desde el 1ro de diciembre de 1983 Lever alquiló una oficina en el Edificio Mercantil Plaza en Hato Rey. La corporación demandante sostuvo que no procedía la deficiencia notificada ya que los empleados de su oficina en el Municipio eran empleados de Lever Brothers Company, la compañía matriz de Lever que se dedica a la manufactura de algunos de los productos que ésta vende en Puerto Rico. Alegó que a dichos empleados no se les podía atribuir gestión alguna de ventas ya que realizaban únicamente funciones de asesoría de mercadeo y técnica para sus distribuidores. Sostuvo también que el establecimiento de la referida oficina no cambió en nada su relación contractual preexistente con Plaza y Borden bajo el contrato de distribución.

Las partes estipularon los hechos esenciales y con unas declaraciones juradas presentadas por Lever el caso fue sometido para su resolución.[2] La controversia quedó limitada a la determinación de si Lever realizó negocios en el Municipio.

El tribunal (Hon. Arnaldo López Rodríguez, J.) dictó sentencia mediante la cual declaró con lugar la demanda y

---

[1] No está en controversia que los distribuidores pagan las patentes municipales por el volumen de negocio en sus respectivos municipios.

[2] Lever estipuló sus planillas de contribución sobre ingresos. Para fines de éstas, Lever reconoce que ocurre un evento contributivo una vez pasa la titularidad de sus productos a través de la venta por sus distribuidores.

dejó sin efecto la notificación de deficiencia. Conforme a su determinación, todos los productos que Plaza y Borden reciben y almacenan en sus depósitos para la venta son a consignación, por lo que el título de dichos productos es responsabilidad de Lever hasta tanto el producto es vendido a los respectivos clientes en el mercado local, a quienes pasa directamente el título de aquéllos. En los contratos de distribución se pactó que Lever establecería el precio de reventa de tales productos en el mercado local así mantenidos a consignación por Plaza y Borden. El suplido de inventario y la facturación a Plaza y Borden se hacen directamente desde la oficina de Lever en Nueva York. En la relación comercial con Lever, tanto Plaza como Borden actúan como comisionistas y son responsables del pago de las patentes municipales por el volumen de las ventas de los productos en los respectivos municipios donde ubican sus almacenes. El tribunal concluyó que la oficina de Lever en San Juan no se involucra directamente en la venta de los productos que Plaza y Borden tienen a consignación ya que su función es exclusivamente la de prestar servicios de consultoría a éstas en las áreas de distribución, mercadeo, promoción, empaque y venta de los productos en el mercado local.

Inconforme, acude ante nos el Municipio y señala que erró el tribunal al "resolver que la demandante-recurrida no tiene que pagar patentes municipales al Municipio de San Juan".

El recurso fue expedido y con el beneficio de las comparecencias de las partes, resolvemos.

## II

La Asamblea Legislativa expresamente ha autorizado a los municipios del Estado Libre Asociado de Puerto Rico a imponer y cobrar patentes municipales. En diversas ocasiones hemos tenido la oportunidad de expresarnos en

torno a la naturaleza y el alcance del poder tributario de nuestros municipios.

> En Puerto Rico, a diferencia de otras jurisdicciones, se favorece una interpretación amplia del poder tributario delegado a los municipios. La Asamblea Legislativa, al amparo del Art. VI, Sec. 1 de nuestra Constitución ... delegó esa autoridad fiscal con la intención clara de "ampliar el número de industrias o negocios con fines de lucro sujetos a tributación". *American Express Co. v. Municipio de San Juan*, [120 D.P.R. 339, 346 (1988)]. La ley responde a una filosofía que favorece la ampliación de los poderes de los municipios, de forma que éstos puedan proveer más servicios directos a la ciudadanía. *F.D.I.C. v. Mun. de San Juan*, 134 D.P.R. 385, 392 (1993).

El derecho puertorriqueño, en materia de patentes municipales, ha seguido una tendencia que favorece la ampliación de las facultades impositivas de los municipios. Esto ha sido así, toda vez que las expresiones legislativas han continuado fortaleciendo la facultad contributiva de los gobiernos municipales mediante enmiendas a la Ley de Patentes Municipales. Véase *Molinos de P.R. v. Municipio de Guaynabo*, 105 D.P.R. 470, 474 (1976).

De otra parte, también hemos interpretado el principio de prorrateo sobre el cual se estructura la Ley de Patentes Municipales. Dicho principio implica que cada municipio obtenga el correspondiente pago de patentes por aquella actividad económica que se materializa dentro de su jurisdicción geográfica, independientemente de si ésta se devenga o contabiliza finalmente por una casa u oficina en otra municipalidad. Refiérase a *Mun. Trujillo Alto v. Cable TV*, 132 D.P.R. 1008 (1993), que cita a *Banco Popular v. Mun. de Mayagüez*, 120 D.P.R. 692 (1988),[3] y *Coca Cola v. Municipio de Aguadilla*, 99 D.P.R. 839, 841 (1971).

---

[3] Este caso fue modificado en reconsideración en *Banco Popular v. Mun. de Mayagüez*, 126 D.P.R. 653 (1990), a los únicos fines de devolver el caso al Tribunal Superior para que éste, de ser necesario, y de conformidad con la Sec. 34(c) de la Ley de Patentes Municipales, 21 L.P.R.A. sec. 652f(c), reconozca la procedencia de cualesquiera créditos por aquellas contribuciones pagadas por el banco en sus sucursales en el exterior.

La Ley de Patentes Municipales de 1974 (vigente a la fecha de los hechos del caso ante nuestra consideración), autoriza a los municipios la imposición del pago de patentes a "toda persona dedicada a la ... venta de cualquier bien, negocio financiero y/o cualquier industria o negocio ...".([4]) 21 L.P.R.A. sec. 651b. Según señalamos en *Arecibo Bldg. Corp. v. Mun. de Arecibo*, 115 D.P.R. 76, 78 (1984), "[d]el texto de la ley se desprende que la autoridad concedida a los municipios es amplia. La utilización de las palabras 'toda persona', 'cualquier servicio', 'cualquier industria o negocio' *no permiten que se le dé una interpretación restrictiva ...*". (Énfasis suplido.)([5])

En cuanto a las industrias o los negocios sujetos a patentes, la citada ley en su artículo 1 dispone lo siguiente:

Estará sujeta al pago de una patente *toda persona dedicada con fines de lucro a la prestación de cualquier servicio*, a la venta de cualquier bien, a cualquier negocio financiero o a cualquier industria o negocio en los municipios del Estado Libre Asociado de Puerto Rico, excepto lo que en otro sentido disponen las secs. 651 a 652y de este título, durante cada año económico o parte proporcional del mismo, a partir del primero de

---

([4]) La Ley Núm. 93 de 17 de noviembre de 1992 (21 L.P.R.A. sec. 651a *et seq.*) añadió dos (2) párrafos a este artículo. Cabe señalar que en lo pertinente a la interpretación de esta ley, la ley vigente actualmente ha mantenido la amplia facultad de los municipios en cuanto a la imposición de las patentes municipales. Refiérase a 21 L.P.R.A. sec. 651b.

([5]) En *Arecibo Bldg. Corp. v. Mun. de Arecibo*, 115 D.P.R. 76, 77 (1984), citando a *Molinos de P.R. v. Municipio de Guaynabo*, 105 D.P.R. 470, 473–474 (1976), explicamos que " '[l]a Ley de Patentes de 1914 contenía una enumeración taxativa; la Ley de Patentes de 1971 contenía una enumeración no taxativa y facultaba a los municipios a clasificar e incluir otros comercios, negocios e industrias no enumerados; la vigente Ley de Patentes de 1974 eliminó la enumeración y concedió una facultad general a los municipios para imponer y cobrar patentes a los tipos que dicha ley prescribe o al tanto por ciento uniforme de dichos tipos que las Asambleas Municipales determinen' ". Las siguientes leyes enmendaron posteriormente la Ley de Patentes Municipales de 1974 (21 L.P.R.A. sec. 651 *et seq.*): Ley Núm. 25 de 9 de agosto de 1974 (21 L.P.R.A. secs. 651h y 651h n.); Ley Núm. 4 de 14 de noviembre de 1974 (21 L.P.R.A. secs. 651a, 651a n., 651b, 651b n., 651c, 651c n., 651i, 651i n., 651j y 651j n.); Ley Núm. 10 de 18 de junio de 1976 (21 L.P.R.A. sec. 651f); Ley Núm. 3 de 7 de marzo de 1983 (21 L.P.R.A. sec. 651h(24)); Ley Núm. 23 de 24 de julio de 1985 (7 L.P.R.A. ant. sec. 231a(e) *et seq.*); Ley Núm. 82 de 30 de agosto de 1991 (21 L.P.R.A. sec. 651 *et seq.*), y Ley Núm. 93 de 17 de noviembre de 1992 (21 L.P.R.A. sec. 651 *et seq.*).

julio de 1974 y extensiva a todo año económico subsiguiente ....
(Énfasis suplido.) 21 L.P.R.A. sec. 651c (Sup. 1975).

El criterio que ha de utilizarse para la determinación de la cuantía sujeta al pago de patentes municipales se encuentra en el Art. 3(b) de la ley. Esta sección dispone que:

(b) ... se le impondrá y cobrará a toda persona dedicada a la prestación de cualquier servicio, a la venta de cualquier bien o a cualquier industria o negocio no comprendido bajo el inciso (a) de esta sección ... de *su volumen de negocio atribuible a operaciones en el municipio que impone la patente autorizada* ... (Énfasis suplido.) 21 L.P.R.A. sec. 651d(b).([6])

Por su relevancia al caso ante nuestra consideración nos remitimos a las definiciones siguientes incluidas en la citada Ley de Patentes Municipales:

... "Persona" significa e incluye un individuo, un fideicomiso, o una sucesión, una sociedad o una corporación, asociación, *cualquier forma de organización de servicios,* de venta, financiera, industria o negocio, así como *cualquier* cesionario, fiduciario, o *representante* ya sea designado por una corte o de otro modo *y que se dedique con fines de lucro a la prestación de cualquier servicio,* a la venta de cualquier bien, a cualquier negocio financiero o cualquier industria o negocio en cualquier municipio del Estado Libre Asociado de Puerto Rico. (Énfasis suplido.) 21 L.P.R.A. sec. 651a(a)(2) (Sup. 1975).

"Servicios" significa *aquellas operaciones llevadas a cabo por toda industria o negocio de prestación de servicios al usuario o consumidor* inclusive pero no limitados a los servicios profesionales, siempre que no estén comprendidos por otros términos de las secs. 651 a 652y de este título. (Énfasis suplido.) 21 L.P.R.A. sec. 561a(a)(3) (Sup. 1975).

"volumen de negocios" significa los *ingresos brutos que se reciben o se devenguen por la prestación de cualquier servicio,* por la venta de cualquier bien, *o por cualquier otra industria o negocio en el municipio donde la casa principal realiza sus operaciones* o los ingresos brutos que se reciban o se devenguen por la casa principal en el municipio donde ésta mantenga, oficinas, almacenes, sucursales, planta de manufactura, envase, embotellado, procesamiento, elaboración, confección, ensamblaje, ex-

---

([6]) Este artículo fue enmendado por la Ley Núm. 82 de 30 de agosto de 1991, *supra.* Refiérase a 21 L.P.R.A. sec. 651d.

tracción, lugar de construcción o cualquier otro tipo de organización de industria o negocio para realizar negocios a su nombre, sin tener en cuenta sus ganancias o beneficios. (Énfasis suplido.) 21 L.P.R.A. sec. 561a(a)(6)(A) (Sup. 1975).[7]

Recientemente reiteramos que el factor determinante para la imposición del pago de patentes municipales sobre un volumen de negocios es que "el ingreso se produzca *como consecuencia de los negocios que la persona, natural o jurídica, desempeña en el municipio, lo cual implica que el ingreso no hubiese sido generado a no ser por las operaciones llevadas a cabo allí"*. (Énfasis suplido.) *The Coca Cola Co. v. Mun. de Carolina*, 136 D.P.R. 216, 221 (1994).

De los citados preceptos de la ley se desprende claramente que para validar la tributación municipal es necesaria la concurrencia de dos (2) criterios. El primero de éstos exige que la empresa o negocio tenga un establecimiento comercial u oficina dedicada con fines de lucro a la prestación de cualquier servicio en el municipio correspondiente. En segundo lugar, una vez cumplido con el criterio anterior, es necesario que se determine la base sobre la cual se impondrá la patente. Específicamente, la ley señala que deberá hacerse sobre el volumen de negocios atribuible a la prestación de algún servicio, industria o negocio que se lleve a cabo en el municipio. No obstante, una industria o negocio a la cual fuese aplicable ambos criterios podría no tener responsabilidad tributaria municipal si se encuentra dentro de algunas de las exenciones de la ley.

Cabe señalar que en materia de interpretación de exenciones tributarias constituye un principio básico que éstas —como gracias legislativas que constituyen, a su vez, derogaciones del poder soberano— no deben extenderse más allá de los términos expresados y exactos del estatuto que las otorga. Por ello, toda duda debe resolverse en contra de

---

[7] Las enmiendas a esta sección se encuentran en 21 L.P.R.A. sec. 651a. La Ley Núm. 93, *supra*, enmendó este artículo en términos generales, añadió algunos incisos y reenumeró los que se citan en esta sentencia.

la existencia de la exención. *Director Of. Inspección Notarías v. Colón*, 131 D.P.R. 102 (1992), que cita a *Texas Co. (P.R.) Inc. v. Tribl. de Contribuciones*, 82 D.P.R. 134, 160–161 (1961). Véanse, además: *Gotay Lanuza v. Srio. de Hacienda*, 122 D.P.R. 850 (1988); *Banco Popular v. Mun. de Mayagüez*, supra; *Municipio de Carolina v. Caribair*, 101 D.P.R. 943 (1974), entre otros.

Veamos, entonces, si en el caso ante nuestra consideración se cumple con los requisitos de la ley para sostener el cobro de patentes o, si por el contrario, estamos ante una exención.

## III

De los hechos estipulados surge, claramente, que Lever tenía una oficina desde 1983 en el Municipio. Lever mantuvo dicha oficina hasta 1989.[8] La función de esta oficina local era proveer asistencia en asuntos técnicos y de mercadeo a Borden y Plaza. Esta oficina no suplía inventario ni se involucraba en la facturación, labores que se realizaban directamente desde la oficina de Nueva York.

Según señalamos antes, Lever presentó unas declaraciones juradas al tribunal de instancia, las cuales se citan extensamente en la sentencia. De la declaración jurada del Sr. T.C. Morgan, ex empleado de Lever, surge que a pesar de que la oficina de San Juan no se involucraba directamente en las ventas, el Director de Ventas era el supervisor de esta oficina. A esos efectos declaró el señor Morgan "[a]s Sales Director, my duties included supervision of the San Juan Office. During this period of time, Lever employed persons in the San Juan Office who reported to me".[9] Surge también de la declaración jurada de este empleado de Lever que específicamente en la oficina de San Juan se

---

[8] Refiérase a la Sentencia recurrida, pág. 5.

[9] Refiérase a la Sentencia recurrida, pág. 6, inciso 2.

aprobaban planes de mercadeo para la venta, la distribu-
ción y los anuncios de los productos en el mercado de
Puerto Rico y se hacían recomendaciones sobre propuestas
de planes de venta y objetivos atemperados al mercado
local.([10])

Considerando las declaraciones juradas sometidas por
la propia parte recurrida, forzoso es concluir que erró el
tribunal en su interpretación de los hechos y, por ende, en
su aplicación de la Ley de Patentes Municipales de 1974.
La oficina de Lever en San Juan se involucraba directa e
indirectamente con las ventas que, a través de distribuido-
res, realiza esta compañía en Puerto Rico. Esta oficina tra-
zaba los planes de mercadeo de los productos en la Isla y
prestaba el asesoramiento técnico específicamente a los
distribuidores de Lever. Ese tipo de servicio incide directa-
mente sobre el volumen de ventas de los productos. Por
ello, no podemos acoger la posición de Lever de que esta
oficina, por no suplir inventario ni manejar la facturación,
no practicaba directamente en las ventas.

Desde la perspectiva de los distribuidores, la función de
la oficina de San Juan era indirecta, toda vez que éstos
suplían sus necesidades de productos o inventario directa-
mente desde Nueva York. Sin embargo, desde la perspec-
tiva de la empresa interpretamos que esta oficina de San
Juan estaba tan relacionada a la venta de sus productos en
la Isla que era *precisamente el Director de Ventas de la
oficina de Nueva York quien supervisaba las funciones y los
empleados en Puerto Rico.*([11])

---

([10]) En lo pertinente declaró el señor Morgan lo siguiente: "[...] The purpose of
the San Juan Office was to assist Export's distributors/consignees in technical mat-
ters such as approving marketing plans for the sale, distribution and advertising of
products in the Puerto Rico market through selected agents, recommending local
selling proposing plans and objectives suited to the local market." Sentencia recu-
rrida, pág 6, inciso 4.

([11]) "Today, product distribution as well as other business decisions are deter-
mined by cold-hearted rationality. Decisions about where to locate production acti-
vities and how to market products are driven by a number of economic considera-
tions such as quality, price competition, cutting production costs, the desire to
enhance overall performance, and the need to improve market position. The logic of

Interpretando la ley del modo amplio y liberal en que el legislador ha dispuesto, procede que sea revocada la sentencia recurrida. La oficina de Lever en San Juan constituye claramente una oficina de prestación de servicios con fines de lucro. A su vez, precisamente por la importancia de las funciones que ésta realizaba, el volumen de las ventas de la recurrida es atribuible a las gestiones o funciones desempeñadas por dicha oficina en el Municipio. Interpretamos que tratándose de una empresa con fines de lucro, el apoyo técnico brindado a los distribuidores constituye una gestión claramente dirigida a aumentar el volumen de ventas en la Isla. Al estar la labor o el servicio rendido por la referida oficina dirigida sólo a sus distribuidores en Puerto Rico, inferimos que tenía como objetivo no sólo el aumento en las ventas sino, además, en el volumen de distribución y en la diversificación de los productos de Lever en el mercado local. Indudablemente el servicio prestado por dicha oficina influía y beneficiaba directamente las ventas a consignación y la distribución de productos en Puerto Rico, lo cual nos permite atribuirle el volumen de ventas a la oficina de la recurrida en el Municipio.([12])

---

the global manager, as described above, is not limited to truly global enterprises. It has percolated into even smaller, upstart companies with a global vision.

"Like their larger counterparts, these smaller companies understand the necessity of strategy in maintaining the competitive edge in a world of pure capitalist thinking. The national location of the production site has become virtually irrelevant to the overall goals of the global company. Companies do not consider it necessary either to locate their production near the target market or to be vertically integrated. Some produce under direct [multinational enterprise] supervision, while others outsource. Design and marketing may be located closer to the target markets but production located elsewhere.

…"Like a 'shape shifter', the MNE overcomes significant legal and political restrictions by adjusting its shape, shifting resources from one region to another, and by actively manipulating its environment to achieve its goals. Even a casual observation of the characteristic MNE behavior leads to the conclusion that its operational structures, investment, production locations, and marketing activities all stem from extensive planning and strategy." (Escolios omitidos.) K. Yelpaala, *Strategy and Planning in Global Product Distribution—Beyond the Distribution Contract*, 25 Law & Pol'y Int'l Bus. 839, 856–858 (1994).

([12]) La Ley Núm. 82, *supra*, añadió entre las definiciones de la Ley de Patentes Municipales la del término "atribuibles a la operación". Éste "significará la totalidad de los ingresos derivados dentro y fuera de Puerto Rico que reciba o devengue una persona relacionada con la explotación de una industria o negocio en Puerto Rico,

De otra parte, para sostener la posición de la recurrida no sólo nos veríamos forzados a interpretar restrictivamente la Ley de Patentes Municipales, sino que tendríamos que encontrar una exención donde no existe.

Las exenciones de la Ley de Patentes Municipales están enumeradas en 21 L.P.R.A. sec. 651h. Entre éstas no encontramos ninguna que cobije el tipo de actividad realizada por la oficina de Lever en San Juan.[13] Por ello, no podemos exonerar a la recurrida del pago de la deficiencia reclamado por el Municipio.

Por los fundamentos antes discutidos, *se dictará sentencia para revocar aquella dictada por la antigua Sala de San Juan del Tribunal Superior de Puerto Rico y declarando sin lugar la demanda de impugnación de deficiencia instada en este caso.*

El Juez Asociado Señor Hernández Denton emitió una opinión concurrente y disidente. El Juez Asociado Señor Rebollo López no intervino. El Juez Asociado Señor Corrada Del Río se inhibió.

— O —

Opinión concurrente y disidente emitida por el Juez Asociado Señor Hernández Denton.

Concurrimos con la opinión mayoritaria en cuanto concluye que el Municipio de San Juan, por virtud de una interpretación liberal de la ley, podía exigir el pago de patentes municipales por los servicios de asesoramiento técnico y mercadeo prestados por la oficina de Lever Bros. en dicho municipio, dirigidos a aumentar las ventas de los

---

tales como, pero no limitado a intereses sobre inversiones, pagarés u otras obligaciones excluyendo los intereses exentos según definido en la sec. 651h de este título, así como los dividendos o beneficios recibidos por dicha persona". 21 L.P.R.A. sec. 651a(15).

[13] Para una relación de las enmiendas más recientes a las exenciones, refiérase a 21 L.P.R.A. sec. 651h.

productos de esta corporación en Puerto Rico. Claramente Lever Bros. se ha beneficiado de las gestiones realizadas por su oficial en San Juan y debe responder por las contribuciones correspondientes a sus negocios en la ciudad. Los municipios cumplen una función de mucha importancia en nuestras vidas diarias y las personas que tienen sus negocios en los distintos pueblos tienen la responsabilidad estatutaria y cívica de pagar las patentes correspondientes y contribuir de esa manera a la gran variedad de servicios ofrecidos por los gobiernos municipales. Sin embargo, por entender que del expediente no surge prueba suficiente para que desde este estrado apelativo impongamos el pago de patentes a base de la totalidad del volumen generado por las ventas de los productos de Lever Bros. en Puerto Rico, disentimos. Devolveríamos el caso al foro de instancia para la determinación del porcentaje del volumen atribuible a las gestiones de la oficina de San Juan.

La imposición de patentes debe calcularse a base del volumen del negocio atribuible *exclusivamente* a la gestión de la oficina de San Juan y no a base de la totalidad del volumen de negocios de Lever Bros. en Puerto Rico. El factor determinante para la imposición del pago de patentes sobre un volumen de negocios es que "el ingreso se produzca como consecuencia de los negocios que la persona, natural o jurídica, desempeña en el municipio, *lo cual implica que el ingreso no hubiese sido generado a no ser por las operaciones llevadas a cabo allí*". (Énfasis suplido.) *The Coca Cola Co. v. Mun. de Carolina*, 136 D.P.R. 216, 221 (1994).

No procede atribuirle el total del volumen de ventas en Puerto Rico a la oficina de la recurrida en el Municipio de San Juan por el mero hecho de que es la única oficina de la demandada en la Isla. La jurisprudencia ha insistido en que la Ley de Patentes Municipales debe interpretarse amplia y liberalmente. Sin embargo, dicha norma no puede tener el efecto de violar el mandato de la propia ley. En

este sentido debe aplicarse el principio de prorrateo sobre el cual se estructura la Ley de Patentes Municipales. Dicho principio implica "que cada municipio obtenga el correspondiente pago de patentes *por aquella actividad económica que se materializa dentro de su jurisdicción geográfica, independientemente de si la misma se devenga o contabiliza finalmente por una casa u oficina principal en otra municipalidad ...*". (Énfasis suplido.) *Mun. Trujillo Alto v. Cable TV*, 132 D.P.R. 1008, 1012 (1993).

La ley es clara al expresar que la imposición de patentes en ningún caso excederá de punto treinta (.30) del uno porciento (1%) de su volumen de negocio *atribuible al municipio que impone la patente* autorizada. 21 L.P.R.A. sec. 653. Es irrazonable concluir que la totalidad del volumen de ventas en Puerto Rico es atribuible a la gestión de la oficina de San Juan. Debe tenerse en cuenta que, aun antes de que se estableciera la oficina en San Juan, ya existía un volumen de negocios que no es atribuible a las gestiones posteriores de dicha oficina.

Por otro lado, tanto Borden como Plaza pagan patentes municipales en sus respectivos municipios e incluyen como parte de su volumen de negocios, según lo provisto por los Contratos de Distribución, la totalidad de las ventas generadas por los productos de Lever Bros. mantenidos a consignación. Por virtud del contrato de distribución, Borden y Plaza pagan las patentes que le corresponderían a Lever Bros. por su operación mercantil de venta de productos en los municipios de Guaynabo, Bayamón y Toa Baja.

Los servicios de asesoría técnica y de mercadeo constituyen un aspecto subsidiario de la gestión de venta sujeta a patentes en los municipios donde se llevan a cabo las ventas. El grado o por ciento en que dichos servicios influyen en el volumen total está sujeto a patentes en San Juan, pero obviamente ese grado no es equivalente a la totalidad del volumen. En ausencia de dicha prueba en los autos, no debió declararse sin lugar la demanda de impug-

nación de deficiencia. En su lugar, debió devolverse el caso para que el tribunal de instancia determinara dicho por ciento.