ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| FREEPOINT COMMODITIES LLC<br>Apelado<br><br>v.<br><br>MUNICIPIO DE GUAYANILLA Y OTROS<br>Apelante | KLAN202400001 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Caso Número: SJ2021CV08365<br><br>Sobre: Patentes Municipales |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores

Rivera Marchand, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 19 de marzo de 2024.

Comparecen el Municipio de Guayanilla y su Director de Finanzas (Municipio o apelante), y solicitan la revocación de una *Sentencia* emitida el 29 de septiembre de 2023 por el Tribunal de Primera Instancia, Sala de San Juan (TPI o foro primario). En esta, el foro primario declaró ha lugar la demanda de epígrafe por la vía sumaria y determinó que no procedía la imposición de un pago por concepto de patentes municipales a Freepoint Commodities LLC (Freepoint o apelado).

Por los fundamentos que exponemos a continuación, confirmamos el dictamen apelado.

**I.**

Freepoint incoó una demanda[1] contra el Municipio, en la que cuestionó la determinación final de deficiencia en el pago de patentes municipales correspondientes a los años fiscales 2015-2016 al 2021-2022 por $15,936,332.56. Lo antes, conforme dispone

_____

[1] La demanda fue enmendada el 9 de febrero de 2021. Apéndice, págs. 1-9.

Número Identificador

SEN2024_____

el Código Municipal de Puerto Rico, 21 LPRA sec. 8175[2] y la Ley de Patentes Municipal, 21 LPRA sec. 651.

En apretada síntesis adujo que, Freepoint es una compañía de responsabilidad limitada en el Estado de Connecticut y registrada en el Departamento de Estado de Puerto Rico que se dedica a la venta de combustible desde sus oficinas sitas fuera de Puerto Rico. Señaló que, fue seleccionado como proponente agraciado en dos solicitudes de propuestas publicadas por la Autoridad de Energía Eléctrica de Puerto Rico (AEE), lo que resultó en la firma de un contrato para suministrar combustible a la AEE en las centrales de Aguirre, Central Costa Sur, San Juan y Palo Seco. En ejecución de lo anterior, Freepoint arrendó tanques ubicados en un terminal conocido como CORCO, en el Municipio de Peñuelas. Por dicha actividad, Freepoint le pagó patentes municipales al Municipio de Peñuelas. De ahí se transportaba combustible a la Central Costa Sur por tuberías entre CORCO y los tanques ubicados en el Municipio de Guayanilla. A su entender, las actividades de Freepoint ocurrieron fuera del Municipio de Guayanilla desde el 16 de octubre de 2015 y cesaron el 30 de mayo de 2018, por lo que no procedía la imposición de pago de patentes municipales a favor de Guayanilla. En su demanda, el apelante sostuvo que, como cuestión de derecho, no procedía la imposición de pago de patente a la luz de lo resuelto en *Lever Bros. Export Corp. v. Alcalde S.J.*, 140 DPR 152 (1996) y *Lukoil Pan Americas v. Mun. Guayanilla*, 192 DPR 879 (2015).

En reacción, el Municipio acreditó su alegación responsiva el 5 de mayo de 2022, en la que, alegó que Freepoint transportaba el combustible a Puerto Rico mediante barcazas que se anclaban frente a la costa de Guayanilla.[3] En la costa, las barcazas se conectaban en una tubería que, a su entender, se ubica dentro del

---

[2] Artículo 7.213 – Tasación y Cobro de Deficiencia – Procedimiento en general.
[3] Apéndice, págs. 29-43.

límite territorial del Municipio. Destacó que, el contrato de Freepoint y la AEE establece que el combustible era propiedad de Freepoint hasta que se concretara la venta a la AEE en Costa Sur en Guayanilla, Aguirre y Palo Seco. Por tanto, a su entender, la venta del combustible ocurrió dentro de los límites territoriales de Guayanilla, siendo compulsorio sujetar dicha actividad a un pago de patentes en el referido municipio. Fundamentó su postura sobre lo dispuesto en los artículos 7.199[4] y 7.200[5] del Código Municipal de Puerto Rico, *supra*.

Trabada la controversia, Freepoint interpuso una *Moción de Sentencia Sumaria* en la que propuso 30 hechos incontrovertidos e incluyó varios documentos[6] para sostener su solicitud de que se dejara sin efecto la deficiencia final de pago de patentes impuesto por el Municipio. Celebrada una vista de estado de los procedimientos, el 31 de enero de 2023, el TPI dejó en suspenso la adjudicación de la moción sumaria y luego Freepoint nuevamente presentó otro petitorio sumario, y en esta ocasión propuso 32 hechos incontrovertidos junto a varios documentos.[7]

Pendiente la adjudicación de la solicitud sumaria instada por Freepoint, el TPI emitió una *Orden*[8] en la que consignó lo siguiente:

> Para poder atender, de manera responsable, la *Segunda Moción de Sentencia Sumaria* (SUMAC 54) presentada por Freepoint, el *Memorando de Derecho* (SUMAC 55) presentado por el Municipio de Guayanilla, la *Moción en Oposición a Memorando de Derecho* (SUMAC 56) presentada por Freepoint, y la correspondiente *Réplica* (SUMAC 58)

---

[4] Artículo 7.199 – Autoridad para Imponer Patentes (21 LPRA sec. 8161)
[5] Artículo 7.200 – Volumen de Negocios (21 LPRA sec. 8162)
[6] Apéndice, págs. 44-215. Junto a su petitorio incluyó los siguientes documentos: Anejo1- Certificate of Authorization to do Business of a Foreign Corporation emitido por el Departamento de Estado; Anejo 2-Declaración Jurada suscrita por Brandon Diket; Anejo 3-Contrato suscrito por Brandon Diket y Carlos Javier Castro Montalvo; Anejo 4-PREPA Fuels Office; Anejo 5-Carta emitida el 14 de septiembre de 2021; Anejo 6-Carta suscrita el 18 de noviembre de 2021; Anejo 7-Carta suscrita el 22 de noviembre de 2021; Anejo 8-Declaración sobre Volumen de Negocio 1/1/205 al 12/31/2015; Anejo 9-Primer Pliego de Interrogatorios de [Información] Requerimiento de Admisiones; Anejo 10- Freepoint Commodities LLC's Answers And Objections To The Defendant's First Set Of Interrogatories And Request For Information And Documents; y Anejo 11-Informe Positivo del Senado de Puerto Rico – P. del S. 532.
[7] Apéndice, págs. 305-489. Junto a su petitorio incluyó los mismos documentos que en la Moción de Sentencia Sumaria presentada por primera vez.
[8] Apéndice, pág. 635.

presentada por el Municipio, resulta indispensable definir cuál es el límite territorial del Municipio de Guayanilla.

En este momento, dicha falta de definición nos impide estar en posición de determinar si Freepoint: 1) tuvo o no presencia física en el Municipio de Guayanilla; 2) operó en dicho municipio; 3) llevó a cabo negocios en dicho municipio; y/o 4) generó volumen de negocios en dicho municipio.

Como resultado de lo anterior, se señala Vista Presencial el martes 19 de septiembre de 2023, a las 10:00 am, para que las partes aclaren y/o argumenten los siguientes asuntos:

1) ¿Cuánta parte (pies cuadrados) de las facilidades de la Planta de Costa Sur radican dentro de los límites territoriales del Municipio de Guayanilla?

2) ¿Quién proveyó la tubería (infraestructura) mediante la cual se suplió/transportó el combustible a PREPA?

3) ¿Si la entrega del combustible en los tanques de CORCO – los cuales el Municipio de Guayanilla reclama ubican parcialmente dentro de su límite territorial – constituye el "lugar donde se prestó el servicio" al amparo de los estatutos aplicables (véase aclaración en inciso 5)?

4) ¿Si las barcazas contratadas y/u operadas por Freepoint deben considerarse como almacenes, sucursales y/o lugares temporeros de negocio y/o de extracción de combustible al amparo de los estatutos aplicables (véase aclaración en inciso 5)?

5) ¿Por qué - si Freepoint reclama que, posterior al 30 de mayo de 2018, cesó totalmente sus ventas de combustible a la AEE, destinadas a la Central Costa Sur - el Municipio de Guayanilla reclama el cobro de patentes para los periodos posteriores, y hasta los años fiscales 2021-2022? - (Se hace constar que esta controversia, a su vez, influye sobre la determinación del/los estatutos aplicables.)

6) ¿Cómo el Municipio de Guayanilla computó un volumen de negocios anual de $289,870,626.40 durante cada uno de los [años] fiscales para los cuales se notificó una deficiencia a Freepoint?

7) ¿Cómo, si de alguna manera, se distingue la situación fáctica del presente caso con aquella que fue atendida por el Tribunal Supremo de Puerto Rico en Lukoil Pan Americas v. Mun. Guayanilla, 192 D.P.R. 879 (2015)?

Como resultado de las controversias antes identificadas se aclara que, hasta que no se determine sobre la autoridad – si alguna – del Municipio de Guayanilla para imponer el pago de patentes a Freepoint, resulta prematuro (por falta de legitimación) atender el cuestionamiento sobre los $1,312,948.00 que el Municipio reclama recibió Freepoint en rembolsos de PREPA.[9]

Celebrada la vista argumentativa y sometidos los escritos de las partes, el foro primario emitió el dictamen apelado.[10] En esta consignó que:

[...]

---

[9] Apéndice, págs. 635-636.
[10] Apéndice, págs. 639-643.

En el presente caso no se ha puesto en controversia el hecho de que, para poder llegar a su destino final (tanques de Costa Sur), el combustible que estaba almacenado en los tanques de la CORCO tenía que pasar primero por la interconexión que se encuentra en el Municipio de Peñuelas. Tampoco se ha puesto en controversia el hecho de que, una vez el combustible pasaba por la interconexión, se convertía en propiedad de la AEE. Por estar la interconexión de las tuberías ubicada en el Municipio de Peñuelas, las entregas ocurrían en dicho municipio; no en Guayanilla.

La otra controversia que se encuentra ante nuestra consideración surge en el caso de las entregas de combustible destinado a la Central Costa Sur desde barcazas u otras embarcaciones arrendadas por Freepoint. En particular, porque el Municipio de Guayanilla reclama que: "estas barcazas se anclaban frente a la costa correspondiente a Guayanilla" y "se conectaban a una tubería que está dentro de los límites territoriales de Guayanilla". (SUMAC 55, página 6, ¶ 2.)

En el caso de transferencias de combustible desde barcazas u otras embarcaciones, el Artículo IV, inciso D, del Contrato Numero 902-02-15, establece que las entregas (transferencia de título) destinadas a la Central Costa Sur ocurrían luego del "flange" (junta de conexión) de las tuberías que van de CORCO hacia la Central Costa Sur. Basado en lo anterior, el Municipio de Guayanilla reclama que tiene facultad para imponer y cobrar la patente municipal a Freepoint toda vez que las barcazas alquiladas por Freepoint para entregar el combustible a la Central Costa Sur "se conectaban a una tubería que está dentro de los límites territoriales de Guayanilla". Se equivoca el Municipio de Guayanilla.

Conforme a la doctrina establecida en *Lukoil Pan Americas v. Mun. Guayanilla*, 192 D.P.R. 879 (2015), ni el hecho de que las barcazas arrendadas por Freepoint se anclaran frente a la costa del Municipio de Guayanilla, ni el hecho de que dichas barcazas se hayan conectado a una tubería que está dentro del referido Municipio de Guayanilla, facultan a dicho municipio para cobrar patentes municipales. En el referido caso de Lukoil, a la página 903, el Tribunal Supremo de Puerto Rico fue aún más específico al determinar que el hecho de que el Municipio de Guayanilla hubiera recibido los productos vendidos por Lukoil en un muelle que radica dentro de su límite territorial no implicaba que dicho municipio estuviera facultado a cobrar patentes municipales por dichas entregas. Para que el Municipio de Guayanilla pueda imponer dicho tributo, se tienen que cumplir los requisitos de "presencia física" establecidos por el Tribunal Supremo desde que resolvió el caso de *Lever Bros. Export Corp. v. Alcalde S.J.,* 140 D.P.R. 152 (1996). En el caso ante nuestra consideración, dichos requisitos no están presentes.[11]

[...]

Basado en lo anterior, y mediante *Sentencia* emitida y notificada el 29 de septiembre de 2023 el TPI declaró ha lugar la *Moción de Sentencia Sumaria* instada por Freepoint y dejó sin efecto la deficiencia final cursada por el Municipio. Oportunamente, el

---

[11] Apéndice, págs. 642-643.

Municipio solicitó reconsideración a la cual se opuso Freepoint. El foro primario denegó la referida solicitud por lo que inconforme, el Municipio acude ante esta Curia en apelación. En su recurso señala los siguientes errores:

> Erró y abusó de su discreción el Honorable Tribunal de Primera Instancia al declarar Ha Lugar la segunda Moción de Sentencia Sumaria (SUMAC 54) (Apéndice a la pág. A0305), presentada por la parte demandante usando como fundamento la doctrina establecida en Lukoil Pan Americas v. Mun. Guayanilla, ante y el requisito de "presencia física" establecido en el caso de Lever Bros. Export Corp. v. Alcalde de San Juan, ante.

> Erró el Honorable Tribunal de Primera Instancia, Sala Superior de San Juan, al no intervenir ni pronunciarse, como parte de su deber de asegurar el manejo adecuado de los fondos públicos, con respecto a la suma de $1,312.948.00 que le fue reembolsada por PREPA a Freepoint, para el pago de patentes municipales, y que Freepoint luego de recibido dicho reembolso no declaró ni pagó, a ningún municipio en Puerto Rico. En adición a lo anterior, el TPI tampoco se pronunció sobre las ventas de combustible 6 de Freepoint a la A.E.E. ascendentes a la suma de $707,530,802.00, lo que equivale a una suma de patentes municipales por $3,537,654.01 tampoco declarada ni pagada por Freepoint a ningún municipio en Puerto Rico.

Freepoint compareció el 31 de enero de 2024, mediante *Oposición a Apelación*, por lo que, con el beneficio de las posturas de ambas partes, procedemos a resolver.

**II.**

**A. Sentencia Sumaria**

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R.36, permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales no existe controversia real y sustancial de un hecho material que requiera ventilarse en un juicio plenario, por lo cual solo resta aplicar el derecho. *Birriel Colón v. Supermercado Los Colobos (Econo Rial, Inc.) e Integrand Assurance Company,* 2023 TSPR 120, resuelto el 3 de octubre de 2023; *Oriental Bank v. Caballero García,* 2023 TSPR 103, resuelto el 23 de agosto de 2023.

Mediante la adjudicación de una causa por la vía sumaria, se procura profundizar en las alegaciones para verificar si, en efecto,

los hechos ameritan dilucidarse en un juicio. *León Torres v. Rivera Lebrón,* 204 DPR 20, 42 (2020). Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito, pues se agiliza el proceso judicial, mientras simultáneamente se provee a los litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico. *Serrano Picón v. Multinational Life Insurance Company,* 2023 TSPR 118, resuelto el 29 de septiembre de 2023*; Universal Insurance Company y otro v. Estado Libre Asociado de Puerto Rico y otros,* 211 DPR 455 (2023). Como se sabe, procede dictar sentencia sumaria si se desprende de las alegaciones, deposiciones, declaraciones juradas, contestaciones a interrogatorios, admisiones ofrecidas, entre otros, que no existe controversia real sustancial sobre un hecho esencial y pertinente, y siempre que el derecho aplicable así lo justifique. *González Meléndez v. Municipio Autónomo de San Juan y otros,* 2023 TSPR 95, resuelto el 24 de julio de 2023. De manera que, en aras de prevalecer en una reclamación, la parte promovente debe presentar prueba incontrovertible sobre todos los elementos indispensables de su causa de acción. *Íd.*

Nuestro ordenamiento civil y su jurisprudencia interpretativa impone unos requisitos de forma con los cuales hay que cumplir al momento de presentar una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las

razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. *Oriental Bank v. Caballero García,* supra. Véase, además, la Regla 36.3 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3. Si el promovente de la moción incumple con estos requisitos, "el tribunal no estará obligado a considerar su pedido". *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 111 (2015). Además, el promovente de una solicitud de sentencia sumaria ha de acompañar su petitorio con prueba de la cual surja preponderantemente la ausencia de controversias sobre los hechos medulares del caso. *Birriel Colón v. Supermercado Los Colobos (Econo Rial, Inc.) e Integrand Assurance Company,* supra.

Cabe destacar que, "la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación". *León Torres v. Rivera Lebrón,* supra, pág. 43. Por el contrario, la Regla 36.3(c) de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(c), obliga a quien se opone a que se declare con lugar esta solicitud a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho el promovente puesto que, si incumple, corre el riesgo de que se dicte sentencia sumaria en su contra, si la misma procede en derecho. *Íd.* A esos efectos, deberá sustentar con evidencia sustancial los hechos materiales que entiende están en disputa. *Birriel Colón v. Supermercado Los Colobos (Econo Rial, Inc.) e Integrand Assurance Company,* supra.

Por ello, en la oposición a una solicitud de sentencia sumaria, el promovido debe puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte sentencia sumaria en su contra. *León Torres v. Rivera Lebrón,* supra. Claro está, para cada uno de estos supuestos, deberá hacer

referencia a la prueba específica que sostiene su posición, según exigido por la antes citada Regla 36.3 de Procedimiento Civil. *Íd.* En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. *Íd.* De lo anterior se puede colegir que, ante el incumplimiento de las partes con las formalidades de la Regla 36 de Procedimiento Civil de 2009, *supra,* la consideración de sus posiciones descansa en la sana discreción del Tribunal.

Al atender la solicitud, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por el promovente. *E.L.A. v. Cole*, 164 DPR 608, 626 (2005). Toda inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues sólo procede si bajo ningún supuesto de hechos prevalece el promovido. *Íd.*, pág. 625. Además, al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador debe actuar guiado por la prudencia y ser consciente en todo momento que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley. *León Torres v. Rivera Lebrón,* supra*,* pág. 44.

Sin embargo, la sentencia sumaria generalmente no procederá cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o credibilidad. *Segarra Rivera v. Int'l Shipping et al.*, 208 DPR 964 (2022). Además, existen casos que no se deben resolver mediante sentencia sumaria porque resulta difícil reunir la verdad de los hechos mediante declaraciones juradas o deposiciones. *Jusino et als. v. Walgreens*, 155 DPR 560, 579 (2001). De igual modo, no es apropiado resolver por la vía sumaria "casos complejos o casos que involucren cuestiones de interés público". *Íd.*

El Tribunal Supremo de Puerto Rico ha discutido los criterios que este Tribunal de Apelaciones debe considerar al momento de revisar una sentencia dictada sumariamente por el foro de instancia. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas*, supra, págs. 118-119. Nuestro más Alto Foro señaló que:

> [E]l Tribunal de Apelaciones debe: (1) examinar de *novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al.,* supra, pág. 679.

Conforme a lo anterior, los foros apelativos nos encontramos en la misma posición que el Tribunal de Primera Instancia y utilizamos los mismos criterios para evaluar la procedencia de una sentencia sumaria. *González Meléndez v. Municipio Autónomo de San Juan y otros,* supra. Por ello, nuestra revisión es una *de novo,* y nuestro análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, *supra,* y su jurisprudencia interpretativa. *González Santiago v. Baxter Healthcare,* 202 DPR 281, 291 (2019). De esta manera, si entendemos que los hechos materiales realmente están incontrovertidos, debemos revisar *de novo* si el foro primario aplicó correctamente el derecho. *Acevedo Arocho y otros v. Departamento de Hacienda de Puerto Rico y otros,* 2023 TSPR 80, resuelto el 26 de junio de 2023.

### B. Poder del Estado para imponer y cobrar contribuciones

Imponer y cobrar contribuciones es una función gubernamental que responde a la facultad del Estado como un ente

soberano. *Mun. de San Juan v. Prof. Research,* 171 DPR 219, 230 (2007). Esta facultad se desprende de la Constitución de Puerto Rico, que dispone lo siguiente:

> El poder del Estado Libre Asociado para imponer y cobrar contribuciones y autorizar su imposición y cobro por los municipios se ejercerá según se disponga por la Asamblea Legislativa, y nunca será rendido o suspendido. 1 LPRA, Art. VI, sec. 2.

El poder de imponer y cobrar contribuciones está sujeto a restricciones, tales como el cumplimiento del debido proceso de ley, y la exigibilidad y validez de la deuda. *Mun. de San Juan v. Prof. Research, supra,* pág. 231. La Asamblea Legislativa está facultada para delegar a los municipios su poder de imponer y cobrar contribuciones. 1 LPRA, Art. VI, Sec. 2.

Por consiguiente, los municipios, por sí mismos, no cuentan con un poder inherente para imponer contribuciones. No obstante, en aras de que "los municipios tengan mecanismos para recaudar fondos y así poder brindarles más servicios a sus ciudadanos, la Asamblea Legislativa ha adoptado varios estatutos en donde se les delega la facultad de imponer contribuciones a nivel municipal". *McNeil Healthcare, LLC. v. Municipio de Las Piedras y otros*, 2023 TSPR 135, resuelto el 14 de noviembre de 2023; citando a *Lukoil Pan Americas v. Mun. Guayanilla,* supra.

Uno de los estatutos que la Asamblea Legislativa adoptó fue la Ley de Patentes Municipales, Ley Núm. 113 de 10 de julio de 1974, hoy derogada por la Ley 107-2020, mejor conocido como Código Municipal de Puerto Rico. La legislación autorizó a las asambleas municipales a imponer y cobrar patentes a toda persona dedicada a la prestación de cualquier servicio o a la venta de cualquier bien, dentro de sus límites territoriales. 21 LPRA sec. 651b.

Por lo tanto, las patentes no son más que "un impuesto sobre el volumen de negocios de la empresa objeto del tributo", el cual se

calcula a base del volumen de negocios llevado a cabo por la empresa en ese municipio. *McNeil Healthcare, LLC. v. Municipio de Las Piedras y otros,* supra*;* citando a *Lilly del Caribe v. Mun. de Carolina,* 210 DPR 306, 321 (2022); *Lukoil Pan Americas v. Mun. Guayanilla,* supra; *Muñiz Burgos, Inc. v. Mun. De Yauco,* 187 DPR 665, 681 (2013).

Nuestro Mas Alto Foro determinó en *Lever Bros. Export Corp. v. Alcalde S.J.,* supra, que debían concurrir dos requisitos para que opere la imposición de la patente municipal. A tales efectos, señaló los siguientes requisitos:

(1) **Que la empresa o negocio tenga un establecimiento comercial u oficina dedicada con fines de lucro a la prestación de cualquier servicio en el municipio correspondiente;**
(2) **Una vez cumplido con el criterio anterior, es necesario que se determine la base sobre la cual se impondrá la patente.**

(Énfasis nuestro)

Años más tarde, en *Lukoil Pan Americas v. Mun. Guayanilla,* supra, el Tribunal Supremo atendió una controversia similar a la del caso ante nuestra consideración. En esencia, se trataba de Lukoil, una compañía de responsabilidad limitada organizada bajo las leyes del estado de Delaware y registrada en Puerto Rico como corporación foránea. Producto de un contrato con la AEE, Lukoil contrató compañías marítimas para el transporte de combustible. Por motivo de dicha transacción, el Municipio notificó a Lukoil una deficiencia en el pago de patentes municipales. Lukoil, por su parte, alegaba que, al no tener oficina, establecimiento comercial o presencia física en el Municipio, no procedía la imposición de las patentes municipales. Lo anterior, pues no almacenaron el combustible en el dicho municipio.

Específicamente, el Municipio señalaba que, al combustible ser recibido en uno de sus puertos, correspondía la imposición de la deficiencia, aun sin Lukoil tener oficina y empleados dentro de la

demarcación territorial municipal. Asimismo, reclamaba que el requisito de presencia de una oficina o establecimiento en el municipio no debía ser un requisito para las actividades tributables. Ello, pues dicho requisito hubiese dejado sin efectividad la intención del legislador para garantizar la autonomía fiscal que se incluyó al aprobar la legislación.

El Tribunal Supremo dispuso en esa ocasión que "…independientemente de cuál sea el caso particular del negocio o industria del que se trate, la Sec. 3 de la citada Ley Núm. 113 contempla el que haya **presencia física** en el municipio impositor, ya sea mediante 'oficinas, sucursales, almacenes u otras organizaciones de industria o negocio". Además, para que una compañía esté sujeta a la tributación de patentes municipales en un municipio en particular "el factor determinante es que el ingreso se produzca como consecuencia de los negocios que la persona, natural o jurídica, desempeña en el municipio, lo cual implica que el ingreso no hubiese sido generado a no ser por las operaciones llevadas a cabo allí". Finalmente, reiteró los requisitos a cumplirse para que opere la imposición de las patentes municipales ya establecidos en *Lever Bros. Export Corp. v. Alcalde S.J.,* supra.

**III.**

En su primer señalamiento de error, el Municipio cuestiona la *Sentencia* emitida, por entender que, el foro primario erró al determinar que no cumplieron con los requisitos que impone el caso de *Lukoil Pan Americas v. Mun. Guayanilla,* supra, a los efectos de imponer patentes municipales. Lo anterior, pues alega que la ley sufrió varias enmiendas que no fueron consideradas en la sentencia. En particular, arguye que las referidas enmiendas fueron dirigidas a ampliar la facultad de los Municipios para imponer patentes municipales, prorratear el volumen de negocios en aquellos casos que envuelven operaciones llevadas a cabo en dos o más municipios,

y a establecer que la empresa correspondiente pague patentes municipales al Municipio donde prestó el servicio.

Como anteriormente expresamos, en virtud de la normativa antes expuesta, esta Curia debe revisar *de novo* la *Moción de Sentencia Sumaria* presentada por Freepoint, la *Oposición a la Apelación* presentada por el Municipio y escritos posteriores con sus respectivos anejos, a la luz del derecho aplicable, para así evaluar la determinación del foro primario. Nos corresponde evaluar en primer lugar, si ambas partes cumplieron los requisitos de forma que exige la Regla 36, *supra,* si existen hechos materiales en controversia que impiden la adjudicación del caso sumariamente, para luego aplicar el derecho correspondiente.

Tras nuestra evaluación de la *moción de sentencia sumaria* y la *oposición,* somos de la opinión que ambas partes cumplieron sustancialmente con las exigencias y formalidades requeridas por la Regla 36, *supra,* por lo que el foro primario actuó correctamente al no rechazar el petitorio sumario interpuesto. Ambas partes cumplieron los requisitos de forma, según la normativa expuesta.

Completado dicho aspecto del análisis *de novo* notamos que, en este caso no existen controversias medulares sobre los hechos ocurridos, y así lo estipularon las partes. No obstante, nos encontramos frente a una controversia de derecho que nos corresponde dirimir. En específico, debemos determinar si ante el cuadro fáctico expuesto, el Municipio tenía la autoridad para imponer el cobro de una patente municipal a la corporación Freepoint como consecuencia del contrato que dicha entidad suscribió con la AEE para la venta y entrega de combustible.

Recordemos que, para que se reconozca la validez y eficacia de la imposición de pago por patentes municipales, los municipios deberán cumplir los siguientes requisitos que el Tribunal Supremo reiteró en el caso de *Lukoil Pan Americas v. Mun. Guayanilla,* supra:

1) Que la empresa o negocio tenga un establecimiento comercial u oficina dedicada con fines de lucro a la prestación de cualquier servicio en el municipio correspondiente;

2) Una vez cumplido con el criterio anterior, es necesario que se determine la base sobre la cual se impondrá la patente.

En la *Sentencia* emitida, el foro primario determinó que no se cumplían los requisitos que impuso el Tribunal Supremo en el caso de *Lukoil*, en cuanto a la "presencia física" de la corporación en el municipio. Puntualizamos que, de nuestro examen del expediente, el foro primario correctamente determinó que, para poder llegar a su destino final (tanques de Costa Sur), el combustible que estaba almacenado en los tanques de la CORCO tenía que pasar primero por la interconexión que se encuentra en el Municipio de Peñuelas y allí se convertía en propiedad de la AEE. En su consecuencia, las entregas ocurrían en dicho municipio; no en Guayanilla. De ahí y conforme a la doctrina establecida en *Lukoil Pan Americas v. Mun. Guayanilla*, supra, ni el hecho de que las barcazas arrendadas por Freepoint se anclaran frente a la costa del Municipio de Guayanilla, ni el hecho de que dichas barcazas se hayan conectado a una tubería que está dentro del referido Municipio de Guayanilla, facultan a dicho municipio para cobrar patentes municipales.

Surge del expediente que, la corporación Freepoint no tiene en el municipio de Guayanilla un establecimiento comercial o una oficina dedicada, con fines de lucro a la prestación de servicios, sino que, meramente la interconexión por donde pasa el flujo del combustible destinadas a las correspondientes centrales (una de ellas ubicada en Guayanilla) pasan por dicho municipio, sin más. El Municipio aceptó que las facilidades de CORCO, donde ubican los tanques utilizados por Freepoint, radican en el Municipio de Peñuelas. Al ser el Municipio de Peñuelas, quien recibe el material que Freepoint entrega, es a estos quien se le debe pagar la patente municipal, y surge del expediente que Freepoint así lo hizo.

Para sustentar su posición, el Municipio alega que la Ley 113, *supra*, sufrió unas enmiendas, las cuales ampliaron la facultad de los Municipios para imponer y cobrar patentes municipales, de manera que se haga justicia a los municipios pequeños que se ven afectados por el trato contributivo desigual y que estas no fueron tomadas en consideración al momento de emitir el dictamen apelado. Sin embargo, de un análisis de las enmiendas a la Ley, nos percatamos que las referidas enmiendas no van dirigidas a la controversia ante nuestra consideración, por lo que el Municipio no nos ha puesto en posición para determinar lo contrario.[12]

Concluimos, pues, que de nuestra lectura del expediente no existen controversias que impidan la solución sumaria del caso de autos, como tampoco hay hechos medulares que lo distingan del caso de *Lukoil*. El apelante tampoco logró diferenciar la controversia suscitada en la presente causa del cuadro fáctico expuesto en *Lukoil*, que nos obligue apartarnos de la doctrina establecida allí por el Alto Foro. En su consecuencia, colegimos que, el foro primario actuó correctamente en su análisis del derecho aplicable y basado en ello, resolver el caso ante su consideración por la vía sumaria.

En su segundo señalamiento de error, el Municipio alega que el foro primario erró al no intervenir, respecto a la suma de

---

[12] Las referidas enmiendas a la Ley 113, supra, a las que hace referencia el Municipio disponen lo siguiente:

- **Surge de la Exposición de Motivos de la Ley 137 del 11 de julio de 2012** que la enmienda versa sobre el volumen y prorrateo para determinar la patente municipal a pagar por un concesionario de un contrato de concesión relacionado a la operación, mantenimiento, financiamiento, rehabilitación y expansión de las carreteras de PR.
- **Surge de la Exposición de Motivos de la Ley 208 del 25 de agosto de 2012** que la enmienda trata sobre las compañías de teléfonos, tanto alámbricas como inalámbricas, para que paguen a prorrata la patente municipal correspondiente a cada municipio prorrateando el volumen de negocios.
- **Surge de la Exposición de Motivos de la Ley 44 del 26 de marzo de 2014** que la enmienda sobre asignar los recaudos por concepto del pago de patentes municipales por servicios de telecomunicaciones.
- **Surge de la Exposición de Motivos de la Ley 187 del 17 de noviembre de 2014** que la enmienda fue a los fines de incluir en el pago de patentes municipales al municipio que corresponda aquellas actividades comerciales ocasionales llevadas a cabo en un lugar temporero de negocios, donde se realicen ventas, órdenes o pedidos por el periodo de tiempo que dure la convocatoria, promoción, feria o lugar de ventas itinerante, tomando como base el volumen de negocios por ese periodo ocasional de ventas; y para otros fines relacionados.

$1,312,948.00 que le fue reembolsada por PREPA a Freepoint para el pago de patentes municipales. Señala que, Freepoint no declaró ni pagó patente municipal por ventas de combustible a la AEE, por lo que implica que hay una suma no declarada que debían devolver, sin incluir intereses, recargos y penalidades. Finalmente arguyen que la sentencia emitida por el TPI les impide cobrar la suma de $1,312,948.00 por las ventas directas de Freepoint a la Central de Costa Sur de Guayanilla. No le asiste la razón.

Así como lo determinamos anteriormente en este caso, no procede la imposición de patentes municipales a Freepoint, pues no se cumple el requisito de presencia física que establece el caso de *Lukoil Pan Americas v. Mun. Guayanilla*, supra. Añádase a ello que, de una lectura de la notificación de la *Deficiencia Final* no surge referencia alguna al reembolso solicitado. Por ello, como cuestión de derecho, no procede dicha reclamación por parte del Municipio. El segundo error no se cometió.

En virtud de lo anterior y dentro del marco jurídico antes enunciado, concluimos que el foro primario no incidió al declarar ha lugar el petitorio sumario presentado por Freepoint y, en su consecuencia, dejar sin efecto la determinación de la *Deficiencia Final* en su totalidad.

**IV.**

Por los fundamentos antes expuestos, confirmamos la *Sentencia* apelada.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones